VALENTINO R. FIANO ET AL. *v.* THOMAS C. MONAHAN BUILDING INSPECTOR OF THE TOWN OF MANCHESTER

SUPERIOR COURT　　HARTFORD COUNTY　　FILE No. 130959

Memorandum filed January 17, 1964

*F. Timothy McNamara*, of Hartford, for the plaintiffs.

*Arthur J. LeClaire, Jr.*, of Manchester, specially for defendant Thomas C. Monahan.

*Irving L. Aronson*, corporation counsel, for all defendants.

HOUSE, J. The plaintiffs, since September, 1960, have been the owners of a building on Charter Oak Street in Manchester which for some time has been used as a gasoline station. The plaintiff Valentino Fiano is the president of the plaintiff corporation. A part of his business is the development of gasoline service stations. Under the zoning regulations of the town, the area is in a residential district and the use of the premises for a gasoline station is a nonconforming use. The regulations (art. 4, § 7) provide, with respect to nonconforming uses: "No building devoted to a nonconforming use shall be enlarged or structurally altered if the cost of all such changes exceeds 50% of the value of the building as assessed at the time of the application for the first change. A nonconforming use may be changed only to a use allowed in the most restricted zone in which the present nonconforming use would be conforming."

With respect to certificates of occupancy, the regulations provide in article 5, § 4: "No land shall be occupied or used and no building hereafter erected

or altered shall be occupied or used in whole or in part for any purposes whatsoever, except for the alteration of, or addition to, a dwelling, until a certificate of occupancy shall have been issued by the Building Inspector, stating that the premises or building complies with all provisions of the zoning regulations. No change or extension of use and no alteration shall be made in a nonconforming use of premises without a certificate of occupancy having first been issued by the Building Inspector that such change, extension or alteration is in conformity with the provisions of the zoning regulations. . . . No building or premises for which a certificate of occupancy is required, may be occupied until such certificate shall have been issued."

It appears from the evidence that at the time in question the building which is the subject of this controversy was assessed in the town of Manchester for a total of only $548. The assessment ratio to fair market value in the town was 72 percent as of October 1, 1960, fair market value as of that date being fixed by the assessor at $761.

The defendant is the town building inspector and enforcement officer for the building and zoning regulations. On July 28, 1960, he issued to the plaintiffs a building permit for the relocation of the existing frame building on the premises, to be done at an estimated cost, according to the permit, of $600. A new foundation was constructed on the lot and the existing building was moved onto it. On November 28, 1960, the plaintiffs obtained from the defendant a building permit for "alterations" and "repairs" to the building for an estimated cost of $1000. There is no breakdown as to how much of this figure was to be for alterations and how much for repairs. The application for the permit was hardly instructive. Under "details," the application states: "To make

alteration to gas station—sheetrock partition for lav. Also new overhead door 9′ x 10′. Also stucco all sides of building."

Article 5, § 3, of the zoning regulations provides, with regard to applications for building permits: "All applications for building permits shall be accompanied by a plan drawn to scale showing the actual dimensions of the lot to be built upon, the size of the building to be erected, the location of the building upon the lot, the location of buildings upon the adjacent lots when necessary, the dimensions of all open spaces, the established building lines within the block and such other information as may be necessary to provide for the enforcement of these regulations." The plan submitted by the plaintiffs was only a roughly drawn sketch, not to scale. While it indicated that two windows and two doors were to be "replaced," these were not included in the work indicated to be "structural alterations." Indicated on the sketch by wavy lines as "structural alterations" were one "9′ x 10′ overhead door," two walk-in doors (all marked "new"), and partitions for two lavatories.

After work had been in progress some time, complaints were made to the defendant that the plaintiffs were making extensive alterations and were installing a hydraulic jack in the building. Upon inspection, the defendant discovered that the work in progress covered much more by way of structural alterations than the application for a permit, with the accompanying sketch, indicated. Instead of a single large door facing the gasoline pumps, two large overhead doors were installed, this project also requiring the actual relocation of the existing single large door. A walk-in door and two windows were relocated, in addition to the construction of two lavatories with walk-in doors and

inside partitions. A new roof was also installed. The two new overhead doors alone were installed at a cost of $380.

The defendant thereupon ordered the plaintiffs to cease further work on the project and requested an itemized accounting of the expense involved in the project. The only information furnished to him was a copy of the contractor's original proposal. This was dated November 3, 1960, and read as follows:

"We propose to furnish labor and material to do the following work.

1  New garage door 9' x 10' rollup type
2  2/6 x 6/8 doors with frames and hardware
3  Partition rest rooms and cover with sheetrock
Total price $236.00"

The plaintiffs brought this action by writ, summons and complaint dated August 7, 1962. They allege that "[s]aid gas station is, in fact, within the requirements of a nonconforming use of the Zoning Ordinances of the Town of Manchester and was so as of the date of the Building Inspector's order and remains so to this day and as a consequence the order of the Building Inspector is without legal basis." By way of relief, they seek (1) an injunction restraining the defendant from enforcing the cease order issued by him and from interfering with the plaintiffs' operation of their gasoline station, and (2) a declaratory judgment determining whether the defendant's order to the plaintiffs is valid.

It should be noted that the defendant, on the basis of an earlier ruling by a town counsel, makes no claim that the construction of a new foundation on the lot and the removal of the building onto that foundation constituted a "structural alteration" within the meaning of the zoning regulations. Nor is any claim raised by the defendant that the instal-

lation of the hydraulic jack constituted such an alteration. It is his claim, however, that aside from these two items the work done by the plaintiffs constituted a violation of the zoning regulations.

It must be concluded that the plaintiffs have wholly failed to sustain the burden of proving their allegation that the building is within the requirements of the zoning regulations concerning nonconforming uses. Whether the restriction of "50% of the value of the building as assessed at the time of the application for the first change" should be interpreted to mean 50 percent of the value placed on the property for assessment purposes, i.e. $279, or 50 percent of the fair market value fixed by the assessors, i.e. $380.50, is immaterial. In either event, the cost of the structural alterations to the building obviously greatly exceeds the relative cost permitted by the zoning regulations for structural alterations to nonconforming buildings. Just how great that excess is need not now be precisely determined.

It is also worthy of note that although the plaintiffs expressly allege, and therefore assumed the burden of proving, that the building still comes within the requirements of the nonconforming use provisions of the zoning regulations, the court was no more successful than the defendant building inspector had been in attempting by inquiry to ascertain exactly what the plaintiffs' costs were in fact. The plaintiffs introduced no evidence whatsoever on this important point.

As the Supreme Court of Errors said in the opinion by *Baldwin, J.,* in *Guilford* v. *Landon,* 146 Conn. 178, 183: "In zoning, alterations in a building which is a part of premises devoted to a nonconforming use are structural alterations if they change the building into a substantially different structure adapted to an extension of the nonconforming use."

That this is the situation here is beyond doubt, as shown by the "before" and "after" photographs.

"It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase." *Salerni* v. *Scheuy,* 140 Conn. 566, 570. "Viewed in terms of widest legislative intent, the purpose of zoning ordinances such as the one presently considered is to confine certain classes of buildings and uses to certain localities. So far as a nonconforming use is inconsistent with this objective, the nonconforming use should, consistently with the property rights of the individuals affected and substantial justice, be reduced to conformity as quickly as possible. The general method of accomplishing this end is to prevent any increase in the nonconformity and eventually to lessen and do away with the nonconforming use." *Beerwort* v. *Zoning Board of Appeals,* 144 Conn. 731, 733; see also *State* v. *Perry,* 149 Conn. 232, 234.

The plaintiffs have failed to prove that they are entitled to the injunctive relief which they seek.

On the other hand, it clearly appears that the plaintiffs have violated the zoning regulations by structurally altering a building devoted to a nonconforming use at a cost in excess of 50 percent of the value of the building as assessed at the time of the application for the first change. Under these circumstances, they cannot legally occupy the premises for any nonconforming use, nor can the defendant building inspector legally issue a certificate of occupancy for the altered structure, since such a certificate would require, under article 5, § 4, of the regulations, a finding, contrary to fact, that the "alteration is in conformity with the provisions of the zoning regulations." As the same section of the regula-

tions provides, "[n]o building or premises for which a certificate of occupancy is required, may be occupied until such certificate shall have been issued."

Under these circumstances, a declaratory judgment may be entered to the effect that the order of the defendant building inspector instructing the plaintiffs to stop work on the alteration of the subject building is valid since the work already performed is in violation of the zoning regulations of the town of Manchester which prohibit the structural alteration of a building devoted to a nonconforming use when the cost of all such changes exceeds 50 percent of the value of the building as assessed at the time of the application for the first change.

Judgment shall enter accordingly.