[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs Stylianos Manousos and Park-Ride-Fly, Inc. bring this action to appeal a decision of the defendant Windsor Locks Zoning Board of Appeal which denied the plaintiff's appeal of a cease and dismiss order issued by a Windsor Locks zoning enforcement officer. The following facts are undisputed: Plaintiff Stylianos Manousos owns certain land which he leases to plaintiff Park-Ride-Fly. Manousos has operated a valet parking service on the property since 1985. Before August 27, 1985 the land was owned by Bell-Par, Inc. and leased to a tenant, New England Rental and Leasing Corp., who operated a valet parking service on the property. The lease demised four acres with an option to lease additional acreage. On August 27, 1985, Bell-Par, Inc., the former owner of the property, entered into a lease with Manousos Parking, Inc. the corporate predecessor of Park-Ride-Fly, Inc. This lease demised four acres with an option to lease additional acreage and, in addition, provided that the rent would be based on a percentage of revenues. On June 20, 1986, Mr. Manousos purchased the entire tract of land, 16.42 acres.[1] The extent of the plaintiff's expansion from the original four acres devoted to valet parking from 1985 up to the time the enactment of the new ordinance, May 1, 1987, is at the heart of the CT Page 4102 present dispute.
 I.
It is undisputed the valet parking was not a permitted use in Windsor Locks as of May 1, 1987. As of May 1, 1987, plaintiffs' operation of the valet parking lot thus continued as a protected nonconforming use.[2] On April 18, 1990, Fred Miclon, the Zoning Enforcement Officer for the Town of Windsor Locks issued a cease and desist order to the plaintiffs which contained the following language:
 The property which is owned by your company at 110 Ella Grasso Tpke. Road in Windsor Locks, Connecticut, appears to have only four acres allocated to Valet Parking.
 Pursuant to Section 402 of the Zoning Regulations for the town of Windsor Locks, which were revised as of May 1, 1987, Valet Parking is not a permitted use in the Town of Windsor Locks.
 It appears to me that since May 1, 1987, the valet parking lot located at 100 Ella Grasso Turnpike Road in Windsor Locks has expanded considerably beyond the original four acres allocated for valet parking.
 Therefore you are directed to cease and desist from expanding the valet parking lot and to use only the four acres that were allocated to valet parking. This directive is effective immediately.[3]
The plaintiff, Mr. Manousos, doing business as Park-Ride-Fly, Inc., appealed this cease and desist order based on Chapter 1302 of the Windsor Locks Zoning Ordinances. Public hearings were held before the Windsor Locks Zoning Board of Appeals (hereinafter "ZBA") on July 2, 1990 and August 6, 1990. On September 10, 1990, public executive session was held at which time the ZBA denied the plaintiff's application of appeal. Subsequently, plaintiffs commenced their appeal to this court and obtained at that time an order to restrain the town of Windsor Locks from enforcing the cease and desist order pending appeal.
Plaintiffs-appellants claim the decision of the ZBA was illegal being contrary to the evidence before the board, none of which indicated plaintiffs were utilizing only four acres CT Page 4103 prior to May 1, 1987 for valet parking. Secondly, the plaintiffs claim the decision was arbitrary and capricious in that nothing in the town's regulations limits valet parking to four acre areas. Finally, plaintiffs claim that the decision of the ZBA was mistaken as to the law of Connecticut in regard to the expansion of a nonconforming use and that plaintiff Manousos had a right in fee, and plaintiff Park-Ride-Fly a leasehold right, to park cars upon the entire parcel of land at the time the prohibitory regulation was enacted on May 1, 1987.
 II.
A party aggrieved by a decision of a zoning commission may appeal to the superior court pursuant to 8-7 of the Connecticut General Statutes. For standing to appeal, the plaintiff has the burden of proving he is aggrieved by establishing he was "specially and injuriously affected" in his property rights, or other legal rights. Primerica v. Planning and Zoning Commission of the Town of Greenwich, 211 Conn. 85,93 (1989); Whitney Theatre Co., Inc. v. Zoning Board of Appeals of the Town of Hamden, 150 Conn. 285, 287 (1963). At the time of the filing of this appeal, thirteen and one half acres of the approximately sixteen-acre parcel was being utilized by the plaintiffs for valet parking.[4] Since the cease and desist order restricts plaintiff's nonconforming use to only four acres, there is little doubt that the plaintiffs will be specially and injuriously affected in their property rights and thus have standing to appeal.
This court may sustain plaintiff's appeal only upon a determination that the decision of the zoning body was unreasonable, arbitrary, or illegal. Baron v. Planning and Zoning Commission of Town of Haddam, 22 Conn. App. 255, 257
(1990); Torsiello v. Zoning of Appeals of City of Milford,3 Conn. App. 47, 50 (1984). Beit Havurah v. Zoning Board of the Town of Norfolk, 177 Conn. 440, 444 (1979). The court must not disturb the decision as long as honest judgment has been reasonably and fairly exercised by the ZBA. Baron v. Planning and Zoning Commission of Town of Haddam, supra, 257. Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654 (1980). The burden of proof to show that the zoning authority acted improperly is the plaintiff's. Verney v. Planning and Zoning Bd. of Appeals of Town of Greenwich, 151 Conn. 578, 580 (1964); 301, 303 (1964).
When a zoning authority gives reasons for the action it has taken, the question for the court to determine on appeal is whether the reasons assigned are reasonably supported by the record and pertinent to considerations which must be applied under applicable zoning regulations. DeMaria v. Enfield CT Page 4104 Planning and Zoning Commission, 159 Conn. 534, 540 (1970). In reviewing the decision of the zoning authority, the court cannot conduct a trial de novo and substitute its findings and conclusions for decisions of the board. Wil-Nor Corp. v. Zoning Board of Appeals of the City of Norwalk, 146 Conn. 27,30 (1958). Horn v. Zoning Board of Appeals, 18 Conn. App. 674,676 (1989). Hall v. Planning and Zoning Board of City of Milford 153 Conn. 574, 577 (1966). Even where there is conflicting evidence before the zoning board of appeals, the court cannot substitute its judgment for the Board's. Horvath v. Zoning Board of Appeals of Town of Torrington, 163 Conn. 609
(1972); Westport v. Norwalk, 167 Conn. 151, 161 (1974). In reviewing the decision of the zoning board, the court reviews the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant. Pleasant View Farms Development, Inc. v. Zoning Board of Appeals of Town of Wallingford, 218 Conn. 265, 270 (1991). The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it. Iannucci v. Zoning Board of Appeals of Town of Trumbull, 25 Conn. App. 85, 89 (1991); Torsiello v. Zoning Board of Appeals of the City of Milford, supra, 50. When a zoning authority assigns no reason for its action, the court has the burden of searching the record to discover sufficient reason to support the decision. Zieky v. Town Plan and Zoning Commission of the Town of Bloomfield,151 Conn. 265, 268 (1963). Is the plaintiff's burden to establish that the record does not support the administrative action. Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710,718 (1989). The court cannot substitute its discretion for the Board's conclusion unless the decision was unreasonable. Toffolon v. Zoning Board of Appeals of the Town of Plainville, 155 Conn. 558, 560 (1967).
The deference given to the zoning board's determination does not, of course, insulate it from review; the zoning board's action must be reasonably supported by evidence in the record. Kelly v. Zoning Bd. of Appeals of Town of Hamden,21 Conn. App. 594, 598 (1990). The sufficiency of the evidence to support a finding of the Board presents a question of law. Zachs v. Zoning Board of Appeals of Town of Avon, 218 Conn. 324,331 (1991); Practice Book 4061; General Electric Supply Co. v. SNETCO, 185 Conn. 583, 603-604 (1981).
 III.
Section 8-2 of the Connecticut General Statutes provides that legal uses of land survive the enactment of prohibitory zoning: they become nonconforming uses. The nonconforming use is protected to the extent it existed at the time the prohibitory zoning became effective. Cummings v. CT Page 4105 Tripp, 204 Conn. 67, 91-92 (1987). Adolphson v. Zoning Board of Appeals of Fairfield, 205 Conn. 703, 710 (1988). The protection afforded to the non-conforming is an exception to the regulations and one who claims it bears the burden of proving his entitlement to it. Fiano v. Monahan, 25 Conn. Sup. 363
(1964); Friedson v. Westport, 181 Conn. 230, 234
(1980). The record of the proceedings of the ZBA in this case indicates that the ZBA was informed by the Town Attorney's office, and understood, that plaintiff's expansion from the original four acres was legal prior to May 1, 1987 and that the plaintiff was entitled to continue in his nonconforming use to the extent established prior to May 1, 1987.[5] Indeed the opinion of the then Town Attorney, David J. Wenc, was made part of the record:
 If, based on the evidence presented by Park, Ride Fly, Inc. the Board determined that more than four acres was used by Park, Ride Fly, Inc. for valet parking prior to May 1, 1987, then the amount of property used by Park, Ride Fly in excess of the original four acres prior to May 1, 1987, can be considered a legal non-conforming use. However, if your Board determines that there has been an expansion of the use for valet parking beyond the amount of land used for valet parking prior to May 1, 1987, then Park, Ride, Fly, Inc. would not be entitled to claim a legal non-conforming use as to property beyond the boundaries established prior to May 1, 1987.[6]
It is evident from the record that, although he had the burden of proof, the plaintiff did not carry his burden of proving, as he attempted to do, that Park-Ride-Fly used fourteen or fifteen acres prior to May 1, 1987.[7] Indeed, ZBA member Gragnolatti stated during the deliberations of the Board at the executive session: "[Manousos] has got to prove what he's used. We don't know. What are we going to go out there and measure it for him?" September 10, 1990, T. 6 ZBA member Lingua also indicated that the plaintiff had not proved he was using fourteen or fifteen acres prior to May 1, 1987:
 . . . It started off that the attorney in the very first meeting was talking about, I don't know I forget what this was, nineteen point something acres, and by the number of cars he was using it meant that he was sixteen acres of land. And then I asked him the question, okay if he's using sixteen acres of land and using the same number of cars over in this lot and it's half the size, how can you use that as a determination. He said well I guess maybe we were CT Page 4106 wrong, maybe we're only using six or seven acres. That's the determination that we asked [the zoning enforcement officer] to make. What are those boundaries. You know there's no measurement. If in fact this March sixth 1987 picture is valid legal picture, and I'm assuming it is, then it appears to me that less than half of the property is being used for valet parking. Again, if this is nineteen acres or thirteen acres or twelve acres, I have no idea. I've got three or four numbers being thrown out, but in my opinion, there has been expansion by testimony beyond this point on March sixth.[8]
The ZBA went on to deny the application of appeal, and in so doing affirmed the cease and desist order limiting the plaintiff to the usage of only four acres, on the stated ground that the applicant had extended his nonconforming use beyond the legal limits of May 1, 1987.[9] Indeed this court agrees and takes notice that the photographs taken subsequent to March 1987 do establish a definite increase in the number of cars parked at Park-Fly-Drive since March 1987.[10]
But the fact that there was an increase in the number of acres used subsequent to March 1987 is not relevant to the determination of the number of acres used prior to May 1, 1987. Although Mr. Lingua was of the opinion that plaintiff had not established the number of acres he had used and that the numbers thrown out were unclear to Mr. Lingua, the record indicates that the Board acknowledged that one half of the total acreage was being used for valet parking on visual examination of the March 1987 photograph.[11] Referring to the March 1987 photo, Mr. Linqua stated, "the most you could be using is 8 acres."[12] The Board had taken notice that the total acreage of the parcel was 16.42 acres.[13]
Secondly, there is documentary evidence, the invalidated cease and desist order of January 1987 (based on a prior prohibitory regulation that was subsequently struck down), which underscores that more than four acres was being used by Park-Fly-Drive before May 1987. Mr. Miclon, the zoning enforcement officer wrote in the January 29, 1987 cease and desist order: "It appears to me that since your purchase . . . the valet parking lot has expanded considerably beyond the original four acres leased for parking."[14] The zoning enforcement officer, Fred R. Miclon, agreed in his testimony before the Board that Park-Fly-Drive was using more than four acres prior to May 1, 1987 when questioned by Chairman Becker:
CHAIRMAN BECKER: The question is that prior to CT Page 4107 the moratorium on valet parking was Mr. Manousos, based on his testimony would you agree he, was enjoying more than four acres of the property. That's his contention. That was his whole case here this evening. He showed pictures and he showed certified pictures and so forth that.
. . .
 MR. LINGUA: Tha was part of one of my questions was to the appelant [sic] was how much property you were using on May 1, 1987 and that's where using the cars and the area square footage and everything and total piece of the acreage, the most tha this piece of property could be is eight acres. I mean the use of it is eight acres.
 CHAIRMAN BECKER: But Peter, my question is was he using in excess of four acres.
 MR. MICLON: Well, I think he was. I think some of my letters are dated predate that, and I think some of my notes to him are pretty close to that date starting that he is violation. So he had to be using more of it because the date of my letters.[15]
The ensuing discussion of the Board involved debate about the effect of the prior ordinance and the January 29, 1987 cease and desist order and it was then agreed to continue the hearing to the next monthly meeting during which time the Town attorney could be consulted.[16] The substance of the January 29, 1987 letter was not referred to again in the hearings.
There is insufficient evidence in this record for the ZBA to have concluded that plaintiffs were utilizing only four acres for valet parking on May 1, 1987. To the contrary, the evidence is clear that the plaintiff carried his burden of showing he was utilizing more than four acres prior to May 1, 1987. For the ZBA to restrict the plaintiffs to four acres without having seriously challenged the assertion that more than four acres was being used at that time was contrary to the evidence before it and therefore unreasonable.[17]
Further, there is nothing in this record indicating the source and validity of the original four acre limitation as to the property. This matter is therefore remanded to the ZBA for a determination as to whether the town's regulations limited valet parking to four acres, and for further proceedings as to CT Page 4108 the extent of the nonconforming use on May 1, 1987 in accordance with this opinion. The plaintiffs' appeal is sustained and decision of the Board is therefore reversed in so far as it limits the plaintiff to four acres.
RAYMOND NORKO, J.