PATRICIA WHITTAKER ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF TRUMBULL ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued November 13, 1979—decision released February 19, 1980

*Hugh J. Lavery,* for the appellants (plaintiffs).

*Burton S. Yaffie* and *Laurence V. Parnoff,* for the appellee (defendants).

ARTHUR H. HEALEY, J.   The plaintiffs appealed to the Court of Common Pleas from the decision of the defendant Trumbull zoning board of appeals (hereinafter the board) granting a variance to the defendant Ronald L. Esposito allowing him to subdivide into two lots a parcel of land zoned Residence AA and owned by Guido Gismondi.[1]   That court dismissed the appeal and the plaintiffs[2] have appealed to this court upon the granting of certification.

The record discloses that on March 23, 1977, the Trumbull planning and zoning commission (hereinafter the commission) approved an application made by the defendant Esposito to subdivide the 1.79 acre parcel into two lots and to extend an existing road known as "Quail Trail" through the parcel. See General Statutes § 8-25.  This subdivision would result in two approximately three-quarter acre lots in between which Quail Trail would extend.   See appendix.  The subdivision approval was contingent upon several factors, including the defendant

---

[1] Although Guido Gismondi is record owner of the land in question, the defendant Esposito apparently is a prospective purchaser of the property.

[2] At the hearing before us on this appeal, counsel for the plaintiff Patricia Whittaker presented a "Motion to Substitute or Continue Action as Party Representative" alleging that one Philip A. Tripician now is the owner of the parcel formerly owned by Patricia Whittaker and John Whittaker, and seeking that the new owner be substituted as a party plaintiff for Patricia Whittaker.   The motion for substitution, which was unopposed, has been granted, but, for purposes of clarity in the opinion, we shall refer to Patricia Whittaker as a plaintiff.

board's grant of a variance of § I, article III of the Trumbull zoning regulations, which sets a minimum lot size of one acre in the residence AA zone in which the parcel in question is located. The commission's approval also required Esposito, as the developer, to construct the extension of Quail Trail through the divided parcel. Quail Trail is presently a dead end street and the 1.79 acre parcel lies between Quail Trail in the so-called Lagana subdivision and Foster Avenue, an existing street. The record discloses that it has been the intention of the planning and zoning commission to extend this section of Quail Trail to connect with Foster Avenue when it originally approved the Lagana subdivision in 1969. Therefore, the Lagana subdivision was not finally approved by the commission[3] in 1969; see General Statutes § 8-25; until the subdivision map provided for the future extension of Quail Trail to Foster Avenue. The approved subdivision map, which includes the lots of the plaintiffs and was recorded in the Trumbull land records, shows a turnaround at the end of Quail Trail, where the lot in question is located, with the following notation: "Temp[orary] turnaround, to be discontinued on extension of road." The warranty deed to the Whittakers recites that their premises are subject to this turnaround as shown on the recorded Lagana subdivision map.

The defendant board granted Esposito's application for a variance of the one acre lot size requirement in order to permit the construction of dwellings on each of the two lots, and gave nine reasons

---

[3] No appeal was taken from the commission's decision.

for its decision.[4] Thereafter, Patricia Whittaker, an abutting property owner, and Alexander and Sally Ann Nestor, other property owners, commenced this action.[5] See General Statutes, § 8-8. The trial court found the plaintiffs' appeal to be without merit. We agree.

The question before us essentially is whether the court erred in ruling that the board properly granted the lot size variance the defendant Esposito sought. The plaintiffs argue basically that Esposito demonstrated no true hardship because the undivided lot conformed to the lot size regulation for that zone; and that, because the town did not take the property by its power of eminent domain

[4] "(1) The strict interpretation of the Zoning Regulations would result in undue hardship particularly affecting this property due to its peculiar location. (2) To deny application, would deprive reasonable use of a large area of valuable property. (3) The enforcement of the one-acre zoning would be at variance with many of the lot sizes in the area. (4) The lots have more than sufficient area to meet the minimum yard requirements required for light and air. (5) It would be in harmony with the general purpose and intent of the Zoning Regulations in carrying out the proper arrangement and development of streets in this area. (6) The Board found adequate proof that the parcel cannot be developed in conformity with the Zoning Regulations as additional land is not available. (7) It would not be detrimental to the neighborhood by reason of traffic as the additional traffic which would be introduced on these two streets, if connected, would be minimal and of a local neighborhood character which would primarily be used to provide access to homes in the area. (8) The fact that Quail Trail would not remain a permanent dead-end street at this present terminus was and is a matter of public record. Property owners on Quail Trail bought with this knowledge and, therefore, cannot be aggrieved. (9) It would benefit the town by providing traffic circulation."

[5] Patricia Whittaker has standing to appeal by reason of the fact that she is an abutting property owner. General Statutes § 8-8. While it appears that Alexander and Sally Ann Nestor also joined as plaintiffs in appealing from the decision of the defendant board, the trial court made no finding of aggrievement as to them. This fact is of no consequence to our disposition.

to construct the road, no hardship has been shown to exist. This argument, of course, implicates the reasons the board gave to support its decision to grant the variance.

The ultimate issue raised by this appeal is whether the trial court correctly concluded that the action of the defendant board was not arbitrary, illegal or an abuse of its discretion. *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 752, 345 A.2d 9 (1974); see also *Jenkins* v. *Zoning Board of Appeals,* 162 Conn. 621, 623, 295 A.2d 556 (1972). Courts are not to substitute their judgment for that of the board; *Koproski* v. *Zoning Board of Appeals,* 162 Conn. 635, 636, 295 A.2d 564 (1972); *Wil-Nor Corporation* v. *Zoning Board of Appeals,* 146 Conn. 27, 30, 147 A.2d 197 (1958); and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. See *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 245, 196 A.2d 427 (1963). "Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the trial court." *Willard* v. *Zoning Board of Appeals,* 152 Conn. 247, 248–49, 206 A.2d 110 (1964). See *Krejpcio* v. *Zoning Board of Appeals,* 152 Conn. 657, 662, 211 A.2d 687 (1965). The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs. *Horvath* v. *Zoning Board of Appeals,* 163 Conn. 609, 316 A.2d 418 (1972); *Thorne* v. *Zoning Board of Appeals,* 156 Conn. 619, 621, 238 A.2d 400 (1968); *Talmadge* v. *Zoning Board of Appeals,* 141 Conn. 639, 642, 109 A.2d 253 (1954).

A local zoning board has the power to grant a variance under General Statutes § 8-6(3)[6] where two basic conditions are satisfied: "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." *Smith* v. *Zoning Board of Appeals*, 174 Conn. 323, 326, 387 A.2d 542 (1978). We must determine whether the trial court was correct in concluding that the zoning board of appeals was entitled to grant the variance under the terms of General Statutes § 8-6(3), which have been substantially incorporated in Article VI § 1B[7] of the zoning regulations of the town of Trumbull. Because the trial court made no finding, we have

---

[6] "[General Statutes] Sec. 8-6. POWERS AND DUTIES OF BOARD OF APPEALS. The zoning board of appeals shall have the following powers and duties: . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. No such board shall be required to hear any application for the same variance or substantially the same variance for a period of six months after a decision by the board or by a court on an earlier such application."

[7] Article VI, § 1B allows the zoning board of appeals to "determine and vary the application of these regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values, solely with respect to a parcel of land where, owing to con-

consulted the memorandum of decision to ascertain the basis for its judgment. *Smith* v. *Zoning Board of Appeals,* supra, 325; *Goldberg* v. *Zoning Commission,* 173 Conn. 23, 26, 376 A.2d 385 (1977).

There was evidence before the board that supported its conclusion that the variance would be in harmony with the purpose and intent of the zoning regulations in this area. In reviewing the board's action, the trial court properly recognized that the board could not grant a variance for a use that would impair the integrity of the comprehensive plan. *Miclon* v. *Zoning Board of Appeals,* 173 Conn. 420, 424, 378 A.2d 531 (1977); *Parsons* v. *Board of Zoning Apepals,* 140 Conn. 290, 295, 99 A.2d 149 (1953).

The comprehensive plan is to be found in the scheme of the zoning regulations themselves; see *Loh* v. *Town Plan & Zoning Commission,* 161 Conn. 32, 35, 282 A.2d 894 (1971); *Lebanon* v. *Woods,* 153 Conn. 182, 188, 215 A.2d 112 (1965); see General Statutes § 8-2; as well as in the maps and plans, if there be any, filed pursuant to General Statutes §§ 8-25, 8-29. See *Couch* v. *Zoning Commission,* 141 Conn. 349, 355, 106 A.2d 173 (1954). The board found, and justifiably so, that the variance would be "in harmony with the general purpose and intent of the Zoning Regulations in carrying out the proper arrangement and development of streets in this area." See footnote 4, supra. If the 1.79 acre parcel had been developed as a single lot, as the

ditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of these regulations would result in exceptional difficulty or unusual hardship, so that substantial justice will be done and the public safety and welfare secured."

plaintiffs suggest, the comprehensive plan would have been impaired because such development would have prevented the commission from improving traffic flow and thereby reduce congestion and facilitate the delivery of vital health and protective services. See General Statutes § 8-2; footnote 4, supra. Moreover, the zoning commission's approval of the extension of Quail Trail in 1969, when the development was laid out, and its recent approval of the subdivision plan submitted by Esposito, further support the board's conclusion that the variance would not conflict with the town's comprehensive plan but would, instead, implement it.

Thus, the first requirement of General Statutes § 8-6 (3) having been satisfied, we take up the second requirement: demonstration that adherence to the strict letter of the zoning ordinance causes "unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." *Smith* v. *Zoning Board of Appeals,* supra, 326. The plaintiffs argue essentially that the hardship complained of by Esposito is self-created and, therefore, that the variance was improperly granted. We do not agree.

As we have pointed out in a prior decision, "[t]he meaning of 'exceptional difficulty or unusual hardship' as used in General Statutes § 8-6 has been extensively litigated." *Smith* v. *Zoning Board of Appeals,* supra, 327. In *Smith* we said that "[i]t is well-settled that the hardship must be different in kind from that generally affecting properties in the same zoning district, and must arise from circumstances or conditions beyond the control of the property owner." Ibid. Where the hardship involved "arises as the result of a voluntary act by one other

than the one whom the variance will benefit, the board may, in the sound exercise of its liberal discretion, grant the variance." *Belknap* v. *Zoning Board of Appeals,* 155 Conn. 380, 384, 232 A.2d 922 (1967). Where the claimed hardship arises from the applicant's voluntary act, however, a zoning board lacks the power to grant a variance. *Abel* v. *Zoning Board of Appeals,* 172 Conn. 286, 289, 374 A.2d 227 (1977); *Booe* v. *Zoning Board of Appeals,* 151 Conn. 681, 683, 202 A.2d 245 (1964); *Spalding* v. *Board of Zoning Appeals,* 144 Conn. 719, 722, 137 A.2d 755 (1957); *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 544, 45 A.2d 828 (1946). The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance; *Booe* v. *Zoning Board of Appeals,* supra; cf. *Devaney* v. *Board of Zoning Appeals,* supra; *Highland Park Inc.* v. *Zoning Board of Appeals,* 155 Conn. 40, 43, 229 A.2d 356 (1967); and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. *Misuk* v. *Zoning Board of Appeals,* 138 Conn. 477, 481, 86 A.2d 180 (1952); *McMahon* v. *Board of Zoning Appeals,* 140 Conn. 433, 442, 101 A.2d 284 (1953); see *Berlani* v. *Zoning Board of Appeals,* 160 Conn. 166, 170, 276 A.2d 780 (1970).

The applicant for the variance, Esposito, was presented with a genuine hardship beyond his control and not of his or the record owner's making. The 1.79 acre parcel involved has been designated as the location through which Quail Trail is to extend to connect to Foster Avenue since 1969,

when the town planning and zoning commission approved the Lagana subdivision upon that condition.[8]

Esposito's application for a variance was filed in April, 1977, long after the commission's 1969 decision to extend Quail Trail was expressed in an official map filed pursuant to General Statutes § 8-25.[9] Moreover, Espositio's proposed plan for subdividing the 1.79 acre parcel was approved by the commission only upon the condition that Quail Trail be extended to Foster Avenue. This was a condition the commission had the power to impose; *Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 95–96, 368 A.2d 24 (1976); and one that Esposito was not entitled to ignore. See *Sheridan* v. *Planning Board,* 159 Conn. 1, 9, 266 A.2d 396 (1969); *Windsor* v. *Whitney,* 95 Conn. 357, 362, 111 A. 354 (1920); 4 Anderson, American Law of Zoning (2d Ed.) §§ 23.04, 24.01 to 24.03.

[8] We point out that the warranty deed under which the Whittakers took title to their property (lot 5) recites that the premises conveyed are "SUBJECT TO: . . . (3) Temporary turnaround on Lot 5 of Map 1584 of Trumbull Land Record." The reference to this map has the effect of incorporating the map into the deed referring to it. See General Statutes § 7-31; *Cohen* v. *Holloway's, Inc.,* 158 Conn. 395, 401, 260 A.2d 573 (1969). Moreover, the identifying or explanatory features contained in maps referred to in a deed become a part of the deed, and so are entitled to consideration in interpreting the deed as though they were expressly recited therein. *Barri* v. *Schwarz Bros. Company, Inc.,* 93 Conn. 501, 508, 107 A. 3 (1919). Thus, it is difficult to see how the value of the plaintiffs' property could be adversely affected by the granting of the variance in view of the fact that the plaintiffs took title to their property charged with knowledge of the future extension of Quail Trail and the foreseeable consequences thereof.

[9] The Lagana subdivision map contains the notation: "Approved by Trumbull Planning & Zoning Commission" over the signature of its chairman, as required by General Statutes § 8-25.

The plaintiffs argue that the existing undivided parcel satisfies the one acre lot size requirement for this zone and, hence, that no hardship exists. They suggest that it is only when the public authority takes land for a public street by the power of eminent domain, as was the case in *Smith* v. *Zoning Board of Appeals,* supra, that the unusual hardship requirement of General Statutes § 8-6 (3) is satisfied.

The plaintiffs misconstrue the power of a local planning commission. Such a commission, unlike a municipality, does not acquire title to land in a subdivision that it designates for use as a public street through the power of eminent domain. In his treatise on the subject Professor Anderson has written: "The imposition of subdivision controls is an exercise of the police power, and it seeks to accomplish the orthodox ends of the police power by serving the health, safety, morals, and general welfare of the community. . . . The public benefit which flows from subdivision control does not require that such control be exercised through the power of eminent domain rather than the police power." 4 Anderson, op. cit. § 23.04; see also § 23.32.[10] We have held that a commission's power to regulate the use of land, where reasonable and impartial, does not constitute a taking of property without due process of law or just compensation. See *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* 160 Conn. 109, 112–120, 273 A.2d 880 (1970). " 'Where the free exercise of one's rights of property is detrimental

_____

[10] Although it is true that the commission has the power under General Statutes § 8-29 to lay out proposed highways and to make "assessments of benefits accruing to and damages sustained by any person owning land [affected thereby]," no such provision appears in § 8-25 for the approval of subdivision plans.

to the public interest, the State has the right to regulate reasonably such exercise of control under the police power.'" *State* v. *Kievman*, 116 Conn. 458, 463, 165 A. 601 (1933), quoting *Windsor* v. *Whitney*, 95 Conn. 357, 368–69, 111 A. 354 (1920). One who chooses to engage in subdividing land by that decision thus chooses also to be subject to the reasonable regulation of the local planning commission. See *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission*, supra, 118–19. The decision of a planning commission on a subdivision plan is binding and final unless an appeal is taken therefrom. See General Statutes § 8-28, *Sheridan* v. *Planning Board*, 159 Conn. 1, 9, 266 A.2d 396 (1969). Therefore, we see no practical difference, where hardship is concerned, between taking a parcel of land by the state or a municipality, and a planning commission's binding decision to approve a subdivision plan only upon a particular layout of streets. A person choosing to subdivide land is no less restricted in his use of that land by the commission's action than a property owner is by the action of the condemning authority; the hardship imposed upon him due to the restricted use is no less real.

Under the circumstances of this case, the extension of Quail Trail can hardly be said to be the voluntary act of Esposito. Therefore, the board was legally justified in concluding that a strict interpretation of the zoning regulations would result in undue hardship to him.

There is no error.

In this opinion the other judges concurred.

(*See Appendix on next page*)

## Appendix