CLARENCE PIKE *v.* ZONING BOARD OF APPEALS OF THE TOWN OF HAMPTON ET AL.
(11489)

DALY, O'CONNELL and FREEDMAN, Js.

Argued February 16—decision released May 11, 1993

*Daniel K. Lamont,* for the appellant (plaintiff).
*Noah H. Starkey,* for the appellees (defendants).

O'CONNELL, J. The plaintiff appeals from the judgment of the trial court dismissing his appeal challeng-

ing the defendants'[1] denial of his application for a zoning variance. The plaintiff claims that the trial court improperly concluded that he had failed to demonstrate a hardship sufficient to support the granting of a variance. We reverse the judgment of the trial court.

In 1984, the plaintiff purchased an approved subdivision lot in the town of Hampton for $1000. The lot measures slightly more than one acre and is one of five approved building lots in the subdivision.[2] The zone in which the lot is located is designated as a "residence-agricultural district" and provides for fourteen permitted uses: (1) residential housing; (2) home occupations secondary to a residential use; (3) banks (80,000 square foot minimum lot); (4) shop and storage for tradesmen secondary to a residential use; (5) garden centers, greenhouses, nurseries or landscape services (three acre minimum lot); (6) farms; (7) seasonal roadside stands selling farm produce predominantly grown on the premises; (8) cemeteries; (9) public utilities; (10) municipal, state, or federal government buildings; (11) kennels, stables, riding schools or commercial chicken houses (three acre minimum lot); (12) outdoor recreational uses; (13) educational, instructional, religious, philanthropic and charitable institutions; and (14) residential trailers (two acre minimum lot).

On April 20, 1990, in response to the plaintiff's request for a permit to build a single-family residence, the northeast district department of health conducted an inspection of the lot. Although the lot was part of an approved subdivision, the department of health determined that it was unsuitable for residential use because the soil would not support an adequate on-site sewage disposal system. In addition, the department

[1] The defendants are the zoning board of appeals of the town of Hampton and its members.

[2] The lot appears as lot No. 5 on the map of the subdivision as proposed in 1976.

of health informed the plaintiff that it would not approve any commercial development of the site without an engineer's analysis.[3] As a result, the plaintiff filed an application with the defendant zoning board of appeals (board) seeking variances of two regulations permitting nonresidential uses.[4]

First, because the lot was approximately one acre, he asked the board for a variance of the three acre requirement of the regulation permitting a nursery or garden center. Second, because, as asserted by the plaintiff, the soil was too poor to grow significant amounts of produce, he sought a variance of the on-site growing requirement of the regulation permitting the operation of a seasonal roadside produce stand. The board denied the requested variances, citing as the reason the plaintiff's failure to demonstrate a hardship. The plaintiff appealed and the trial court dismissed the

---

[3] The northeast district department of health report stated in relevant part: "On April 20, 1990, a site visit/consultation was conducted on your property at the junction of Old Route 6 East and Route 6 in Hampton, CT. Soil test viewing of three (3) test pits was accomplished and it was determined, at that time, the lot would not support an on-site sewage disposal system for a house. This evaluation was made on the unsuitable soil below the fill which was deposited. The Northeast District Department of Health will not approve any commercial development of the site without an engineer's analysis."

[4] Although the plaintiff's application indicates that he was in effect seeking a double variance, his appeal to the trial court states that the application was for a double variance or, in the alternative, a variance of either of the two regulations. The trial court adopted the latter position in its memorandum of decision. Thereafter, in both the plaintiff's petition for certification to this court and his brief, he characterizes the application as seeking a variance of either of the two regulations rather than a double variance. Because the trial court decided the case as one involving alternative variances and because the plaintiff's petition for certification and brief adopt that position, we decide it on that theory as well. See *State* v. *Martin,* 2 Conn. App. 605, 612B, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985) (reviewing court decides an appeal on the theory on which it was tried and decided by the trial court and briefed and argued before reviewing court).

appeal, determining that the plaintiff had not demonstrated (1) the existence of an unusual hardship or (2) that a variance would not substantially affect the comprehensive plan.

In reviewing this claim, our ultimate determination is whether the trial court properly concluded that the board's denial of the variance was not arbitrary, illegal and an abuse of its discretion. *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988); *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980); *Haines* v. *Zoning Board of Appeals,* 26 Conn. App. 187, 190, 599 A.2d 399 (1991). The plaintiff bears the burden of demonstrating that the board acted improperly. *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703, 707, 535 A.2d 799 (1988). We test the trial court's conclusion by reviewing the facts in the record. *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 149, 365 A.2d 387 (1976). A reviewing court does not substitute its judgment for the judgment of the board; *Whittaker* v. *Zoning Board of Appeals,* supra; *Haines* v. *Zoning Board of Appeals,* supra; but rather, it examines the board's reasons to see if they find reasonable support in the record and provide a relevant basis for the action taken on the application. *Chevron Oil Co.* v. *Zoning Board of Appeals,* supra, 152–53; *Green* v. *Zoning Board of Appeals,* 4 Conn. App. 500, 502, 495 A.2d 290 (1985).

General Statutes § 8-6 (3) empowers zoning boards of appeals to vary the application of zoning regulations if (1) the variance is shown not to affect substantially the comprehensive plan and (2) adherence to the strict letter of the zoning regulation is shown to cause unusual hardship unnecessary to carrying out the general purpose of the plan. *Grillo* v. *Zoning Board of Appeals,* 206 Conn. 362, 368, 537 A.2d 1030 (1988). The statute provides that the board may grant variances " 'with

respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured.' " *Haines* v. *Zoning Board of Appeals,* supra, 190–91. To support a variance, therefore, a hardship " 'must arise from a condition different in kind from that generally affecting properties in the same zoning district and must be imposed by conditions outside the property owner's control.' " Id., 191. The applicant bears the burden of demonstrating the existence of a hardship. *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 754, 345 A.2d 9 (1974); *Kelly* v. *Zoning Board of Appeals,* 21 Conn. App. 594, 599, 575 A.2d 249 (1990).

The plaintiff claims that without a variance his property has no reasonable use and is, therefore, of little or no value.[5] A variance for a nonresidential use may be appropriate where the location of the property, unusual soil conditions, topography or drainage problems make a lot unsuitable for residential use. R. Fuller, 9 Connecticut Practice, Land Use Law and Practice § 9.3. A mere decrease in property value or other financial loss, however, will not ordinarily constitute a hardship sufficient to mandate the issuance of a variance. *Grillo* v. *Zoning Board of Appeals,* supra, 369; see also *Miclon* v. *Zoning Board of Appeals,* 173 Conn. 420, 378 A.2d 531 (1977) (no hardship although applicant's property was not being used at its maximum financial potential); *Laurel Beach Assn.* v. *Zoning Board of Appeals,* 166 Conn. 385, 349 A.2d 834 (1974) (proof of financial

---

[5] The board does not argue that the condition giving rise to the claimed hardship is common to other properties in the zone or that it was imposed by circumstances within the plaintiff's control. See *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 658, 427 A.2d 1346 (1980).

loss is not proof of legal hardship); *Garibaldi* v. *Zoning Board of Appeals,* 163 Conn. 235, 303 A.2d 743 (1972) (neither financial loss nor inability to reap financial gain necessarily constitutes a hardship); see, e.g., *Berlani* v. *Zoning Board of Appeals,* 160 Conn. 166, 276 A.2d 780 (1970) (no hardship although applicant's business would suffer due to inability to use modern methods); *Shell Oil Co.* v. *Zoning Board of Appeals,* 156 Conn. 66, 238 A.2d 426 (1968) (no hardship although applicant could not add an additional service bay at his gasoline station).

The financial impact must be such that the " 'board could reasonably find that the application of the regulations to the property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where the regulations, as applied, bear so little relationship to the purposes of zoning that, as to particular premises, the regulations have a confiscatory or arbitrary effect.' " *Grillo* v. *Zoning Board of Appeals,* supra; see also *Archambault* v. *Wadlow,* 25 Conn. App. 375, 382, 594 A.2d 1015 (1991); *Stankiewicz* v. *Zoning Board of Appeals,* 15 Conn. App. 729, 733, 546 A.2d 919 (1988), aff'd, 211 Conn. 76, 556 A.2d 1024 (1989).

In the present case, the trial court recognized that of the fourteen possible uses permitted in the zone, the lot had potential use solely for the two purposes suggested by the plaintiff and as a side yard for adjoining property. The court relied on *Grillo* v. *Zoning Board of Appeals,* supra, in reasoning that the lot's potential use as a side yard imbued it with some unspecified marketable value. In *Grillo,* our Supreme Court held that the applicant's undersized lot would not be rendered of minimal value in the absence of a variance permitting residential construction because the lot had value as a side yard. Unlike the lot in the present case, however, the lot in *Grillo* abutted a house and another lot

owned by the applicant and was being used by the applicant as a side yard. The court reasoned, therefore, that the lot had value as a side yard because it would enhance the price of the applicant's house. Moreover, the *Grillo* court also noted that an abutting neighbor had offered to purchase the lot for use as a side yard for a price well in excess of the lot's market value.

The record here reveals none of the *Grillo* considerations nor any other indication that the lot has value as a side yard to adjoining property owners. The lot does not abut any other property owned by the plaintiff and there is no indication in the record that anyone has demonstrated interest in purchasing the lot. Moreover, it appears from a map of the subdivision that the lot is bounded on three sides by roads. The one side not bounded by roads does not abut any other lot in the subdivision. We conclude, therefore, that the record does not support a determination that a side yard is a reasonable use for the plaintiff's lot.

The trial court also reasoned that the lot could be used as a seasonal roadside stand without a variance of the on-site growing requirement because "[s]oil can be amended to make it more productive." This theory was not addressed by the board in its decision, mentioned in the minutes of the hearing or raised in the briefs before the trial court. Moreover, the trial court made no factual findings on the feasibility of such an agrological endeavor. Consequently, because the theory has no basis in the record, we decline to afford it any consideration now.

Accordingly, the record discloses that without a variance the value of the plaintiff's lot will be greatly decreased, if not totally destroyed. Because there is nothing in the record demonstrating any reasonable alternative uses for the plaintiff's property, we conclude that an unusual hardship existed.

The trial court further determined that the granting of either variance would substantially affect the comprehensive plan. Although the board did not cite this as a reason for denying the application, the trial court properly searched the record in making this determination. See *Stankiewicz* v. *Zoning Board of Appeals,* supra, 732–33. Nevertheless, we disagree with the court's conclusion drawn from that search.

The comprehensive plan is found in the zoning regulations themselves. *Adolphson* v. *Zoning Board of Appeals,* supra, 713; *Whittaker* v. *Zoning Board of Appeals,* supra, 656; *Lebanon* v. *Woods,* 153 Conn. 182, 188, 215 A.2d 112 (1965). Article I, § 1, of the Hampton zoning regulations states that the regulations are adopted "to encourage the most appropriate use of land to conserve and stabilize the value of property; to promote health, safety and the general welfare; to regulate and determine size and location of yards; to provide adequate open spaces for light and air; to secure safety from fire, panic, flood and other dangers; to prevent undue concentration of population; to lessen congestion in the streets; and to facilitate adequate provisions for community utilities and facilities, such as transportation, water, sewerage, schools, parks and other public requirements." To promote that purpose, the regulations governing the zone in which the plaintiff's lot is located expressly permit several uses conducive to residential or agricultural endeavors, including nurseries and roadside produce stands. The plaintiff is seeking to use his land for either of those two permitted uses; he is not seeking a use that is inimical to the character of the zone. This is particularly true of his request regarding the roadside produce stand in that the regulations already permit that use in the zone without regard to lot size. The record does not support the conclusion that a granting of either one of the two variances, with appropriate restrictions as determined by

the board, would substantially affect the comprehensive plan. The determination of which variance should be granted is a decision that must be made by the board.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal and to remand the matter to the board for further proceedings consistent with this opinion.

In this opinion the other judges concurred.