[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Facts
The Church of the Blessed Sacrament is the owner of 322 Circular Avenue, Hamden, Connecticut. In 1964, the Church of the Blessed Sacrament constructed a junior high school, later known as the "Barry Junior High School," on the site.
The junior high school operated on the site in its existing building until June, 1992, when it was closed due to financial constraints and declining enrollment.
The Church was approached by several organizations wishing to rent the building for use as a school. In July, 1993, a lease was signed with the New Haven Board of Education for use by The Hyde Leadership School, a magnet school.
As a result of the desire to use the former Barry Junior High School as The Hyde Leadership School, the proponents followed two distinctly different local procedures. In the first set of proceedings, which began with a cease and desist order from the Zoning Enforcement officer, the Zoning Board of CT Page 9510 Appeals overruled the enforcement officer and the matter was appealed to this court. This court remanded the matter to the Zoning Board of Appeals to determine whether or not the proposed Leadership School would be a continuation of a preexisting nonconforming use. The local Zoning Board of Appeals determined that the proposed Leadership School was not the continuation of a previously preexisting nonconforming use. The Board determined that the nonconforming school use had been abandoned.
This court sustained that action in New Haven SchoolDistrict v. Zoning Board of Appeals, No. 376804 (January 3, 1996, Superior Court judicial district of New Haven at New Haven, Booth, J.)
In that proceeding, this court concluded:
 "In conclusion, the court finds that based upon the record before it, there is no question that when the Reverend Daniel J. Barry Junior High School was closed in 1992, there was no intention on the part of the parish or the church corporation to ever reopen a parochial school on that site. The court further finds that there is evidence of an intention to abandon the use of the site as a school, and that there is no substantial evidence which shows a manifest intention on the part of the parish to resume the nonconforming use as soon as it could obtain a tenant. While the evidence is somewhat less convincing of the parish's intention to permanently abandon the use of the property, the evidence is sufficient for the Zoning Board of Appeals to have decided that there was an intention on the part of the parish to relinquish the nonconforming use."
In a separate proceeding at the local level, the church applied to the Hamden Planning and Zoning Commission, for a special permit to allow the use of its property as The Hyde School. The Planning and Zoning Commission granted the requested special permit and the appellant, Frank Fucci, took an appeal from that granting in this case, docket number CV94-0356380S. Although the New Haven School District case was filed second, the court and the parties agreed that a decision in that case, if it were in favor of the parish and allowed CT Page 9511 The Hyde School, would moot the present case. Accordingly, by agreement of the parties, the present case was stayed until a decision had been rendered in the New Haven School District
case. Following a decision in the New Haven School District
case adverse to the operation to The Hyde School, this court ordered reargument in the instant case, Fucci v. Hamden.
Aggrievement
There was evidence presented at the time of the original hearing on the matter to show that Frank Fucci and Lisa Fucci were the owners of property which abutted or was located within 100 feet of the subject property and were aggrieved.
Discussion
To prevail in this proceeding, the appellants must prove that the action of the Planning and Zoning Commission was arbitrary, illegal or constituted an abuse of discretion.Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654
(1980). In Whittaker, the Supreme Court held:
 "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as an honest judgment has been reasonably and fairly exercised after a full hearing. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Id.
In the instant case, the Planning and Zoning Commission granted the requested special permit. A special permit allows the owner of property to use the property in a manner which is expressly permitted under the conditions specified in the local regulations and subject "to conditions necessary to protect the public health, safety, convenience and property values." WATR, Inc. v. Zoning Board of Appeals, 158 Conn. 196,199 (1969).
There is no dispute that pursuant to Section 721 of the Hamden Zoning Regulations, schools are permitted as a special permitted use in the applicable zone.
The appellants claim that this particular school at this particular location is violative of the Special Use Regulation CT Page 9512 in the following specifics: a) definition of "school"; b) size requirements for non-profit schools; c) the absence of an A-2 survey; d) the location of parking within front and side yard set backs; e) the sharing of parking by the church and the school; f) certain landscaping, buffer, sidewalk and handicap parking requirements; g) traffic; h) certain technical requirements of the site plan application.
The proponents of The Hyde School claim that they need not comply with the regulation for a special permit in all of its specifics. Because of the previous decision of this court, the appellees concede, as they must, that the use of the premises as a school has been abandoned. The appellees then advance an argument which finds some slight support in reported case law, but which is largely a novel analysis of the problem.
In essence, the appellees argue that because the use of the location as a school is a permitted use subject to the requirements of the special permit regulation, they may distinguish the instant case from most cases in which a nonconforming use has been abandoned. The appellees frankly concede under the facts before the court that if the school use was not permitted, at least by special permit, any hope of operating the school would have died at the time of this court's earlier decision. The appellees distinguish between the use which has been abandoned but is permitted by current regulation with a special permit and structural requirements
which fail to meet special permit current regulations, but have not been abandoned as nonconforming rights. While this court has found the school use to be abandoned, this court has not found, and the appellants have not contended, that the structures have been abandoned. Both the state statutes and the local regulations recognize that either uses or structures may enjoy nonconforming protection. The parties, in their briefs, do not fully address the issue of how one abandons a structure. At argument, it appeared that there must be intent to abandon a structure, the same manner in which a use must be abandoned. In most circumstances the abandonment of the structure appears to require either that the structure be demolished or that it fall into total disrepair.
The appellees then address each of the appellant's objections as more fully set forth herein. CT Page 9513
Definition of School — Regulation § 210
The appellants argue that The Hyde Leadership School does not constitute a "school" under the local regulation. The Hamden Zoning Regulations § 210 defines "school" as any "building or group of buildings the use of which meets State of Connecticut requirements for a primary or a secondary education." The appellants argue that "no evidence whatsoever that the proposed school fits within this definition of `school' has been offered."
It is clear that the application applies to a building proposed for use as The Hyde School. The transcript of November 30, 1993, at page 70, indicates that "The Hyde School is a public school . . . it's state funded . . . as part of a state public education system . . ." Equally important, the application is for a "school" as that term is used in the Regulations. After obtaining the special permit, if the parish or the city attempts to operate on the site something that is not a "school" then they would be in violation of the permit. That does not constitute a reason to refuse to grant the permit.
Size Requirements — Regulation §§ 721, 742, 710
Section 721a of the Hamden Zoning Regulations require 1,000 square feet for each student enrolled or 120,000 square feet, whichever is greater. The proposed enrollment in the instant case is 240 students which would require 240,000 square feet. In the transcript of November 30, 1993, at page 13-14, the town planner stated:
 "Per Section 721 of the Hamden Zoning Regulations nonprofit schools and colleges are permitted in any residential district subject to special permit . . . The 283,255 square feet lot provides the required 1,000 square foot of lot area per student. It also contains an additional 43,255 square feet to meet the condition of Section 704 which requires 40,000 for churches, synagogues and similar uses."
The court concludes that the record supports the Commission's finding that the site contains more than the required 240,000 square feet after allowing the footage required for other uses located on the premises. CT Page 9514
The appellants also complain of the absence of an A-2 survey. The town planner, at page 12 of the transcript of November 30, 1993, stated:
 "With the concurrence of the chairman of the Planning and Zoning Commission, I have waived the requirement of an A-2 survey and topographic map. This is consistent with past practices in cases where buildings already exist and are not being modified in any significant manner."
Section 843.8 of the Regulations states:
 "The town planner, with the consent of the Commission chairman, may make exceptions to the site plan and information required in this section 843 if the construction or alteration or change of the use does not affect the existing circulation, drainage, relationship with other buildings to each other, landscaping, buffering, lighting or other considerations of the site plan review."
Mindful of the standard of review in proceedings of this nature and the facts contained in the record, this court does not find the waiver of the requirement for an A-2 survey to be sufficient grounds to invalidate the special permit which was granted.
Landscaping, Buffers, Sidewalks and Wheelstops
The Commission conditioned its approval on submission of a revised site plan containing, among other things, a note regarding drainage, curbing, sidewalks, buffers, landscaping, devices to protect pedestrians using the sidewalk, additional landscaping along the frontage, including a tree every fifty feet; installation of a six-foot fence along the western and northern boundaries adjacent to the playing field; and installation of evergreens, ten feet on center, along the western and northern perimeters. While some or all of these requirements may have been missing from the application, they were included in the permit as granted.
Handicapped Parking
CT Page 9515
The appellants note the failure to show handicap parking spaces on the site plan submitted to the Commission for approval. At the public hearing, an engineer for the applicants stated:
 "Seven handicap parking spaces with one handicap van space will be provided."
To ensure that this promise was kept, the Commission conditioned the granting of the permit upon submission of a revised cite plan containing "eight handicap parking places." The plan, as approved, contained required handicap parking.
Traffic plan
The appellants claim that the proposed traffic plan was not in compliance with the Regulations. The traffic engineer's report dated November 18, 1993, and his testimony concluded:
 "Traffic generated by the school will not be significant . . . and the traffic department recommends that safety . . . improvements be implemented."
The Commission conditioned approval on a revised plan containing "elimination of three entrances or exits and guard rails creating dead ends." The Commission had sufficient evidence from which it could find traffic compliance.
Parking
The appellants raise two serious questions concerning parking. First, the parking for approximately 104 cars is clearly located on the site plan within required front and side yards. Parking located within these setbacks is not allowed under special permit regulations. Second, the church and the school share parking, which arrangement is, at best, questionable under the regulations.
It is with regard to parking, and perhaps some minor aspects of landscaping and buffering, that the appellees must succeed with their somewhat novel argument that although the school use has been abandoned the structure has not been abandoned. Unless their claims in this regard are sustained, CT Page 9516 they are in violation of specific parking requirements which are a condition precedent to the issuance of a special permit. The appellees rely to a great extent on a single phrase in the Superior Court decision of Levine v. Town of Fairfield, CV92-0292273S (1993) WL328084, Conn. Super., in which Judge Devlin wrote "the nonconforming nature of the building is not a valid basis to deny a special permit for a permitted use." Levine, at page 4. Judge Devlin, in arriving at his conclusion, relied on Seaside Properties v. Zoning Board of Appeals,14 Conn. App. 638 (1988) and Petruzzi v. Zoning Board of Appeals,176 Conn. 479 (1979).
In Petruzzi, the applicant was attempting to convert a preexisting nonconforming church into a single-family residence. The lot upon which the structure was located did not contain the minimum square footage required by current regulations. Both the church and the single-family residence were permitted uses without any requirements for a special permit.
In Seaside Properties, the applicant was attempting to convert a seasonal dwelling. The case presented typical questions of expansion of nonconforming uses. However, as in Petruzzi, both the seasonal dwelling and the year-round dwelling were permitted uses on an appropriate lot.
This court is convinced that higher court authority, represented by Petruzzi and Seaside Properties, supports the proposition that one may abandon a nonconforming use and still use a structure, which is itself nonconforming, for a different use permitted in the zone. The court in Levine
concludes, without explanation, from an analysis of two fully permitted uses in the earlier cases that an applicant may abandon a fully permitted use and resume a use permitted only by special permit while taking advantage of structural nonconformity to satisfy special permit requirements.
This court is acutely aware of the fact that the location and operation of The Hyde School has twice been considered by the Zoning Board of Appeals of the city of Hamden and that intervening between those two considerations was a remand by this court for a determination of whether or not The Hyde School was a continuation of the use of the Barry Junior High School. Further, the operation of The Hyde School was considered by the Planning and Zoning Commission which issued CT Page 9517 a special permit allowing its operation. At the time of this hearing, all sides indicated a reluctance to have the court remand the matter to the local commission for any reason. While the court would be bound to remand, notwithstanding the preferences of the litigants, if remand were clearly indicated, the court has made every effort to decide the matter on its merits.
The court has addressed each of the appellants complaints. In some areas, the court has found that the appellants complaints are without merit. In other areas there appears to be some merit to the appellants' complaints when the application is compared to the regulation, but no merit when the permit, as issued, is compared to the regulation. Nevertheless, it is clear to this court that the appellees must succeed in their argument that, having lost the status of a nonconforming use, they are still entitled to some protection as a nonconforming structure. This court is not entirely convinced that Seaside Properties or Petruzzi fully support the conclusion of the Levine court that "the nonconforming nature of the building is not a valid basis to deny a special permit for a permitted use." Id. at 4. While it is undoubtedly true that the nonconforming nature of building is not a valid basis to deny a permitted use, the introduction of the need for a special permit into the equation may or may not justify a different result. If the court in Levine considered the difference between a fully permitted use and a use permitted by special permit, it chose not to focus on the difference.
This court can find no authority, nor does it appear to the court that the parties have cited any authority, which supports the proposition that a use allowed by special permit enjoys the same protection as a use allowed fully of right when a nonconforming structure, which violates some aspect of a newly adopted special permit regulation, is to be used for a purpose allowed only by special permit. The court also has some reservation whether the parking in question here is a feature of the structure or a feature of the use.
It is the opinion of the court that these questions are essential questions which are pivotal to a decision of the present appeal. It is further the opinion of the court that for all practical purposes these questions are questions of first impression. CT Page 9518
After long and careful consideration, the court concludes that the appellants are correct in their contention that, to the extent the school site does not meet present special permit requirements, the variations are justified by its status as a nonconforming structure. The court finds the appellant's contentions to be a logical extension of SeasideProperties and Petruzzi. The court further agrees with the appellants that while the use has been abandoned the structure has not been abandoned.
The action of the Planning and Zoning Commission in granting this special permit is sustained and the appeal is dismissed.
Booth, J.