[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
This is an appeal taken from a decision of the defendant Branford Planning and Zoning Commission ("the Commission") granting the application of the defendant Paul Jacques for special exception to construct a two level building, covering 1048 square feet, to house office, lavatory and shower facilities on the first floor with dry storage on the second floor, on the property designated as 70 Maple Street in Branford, said property being known as "Dutch Wharf". The plaintiff owns property designated as 283 Harbor Street, which abuts the subject property.
Dutch Wharf has been operated as a boatyard and marina since the 1950's. There are several buildings on the property utilized for the operation of the business, some 65 boat slips and storage for some 82 boats. The plan is to tear down an existing, 1,000 square foot building and replace it with the building described,supra. The new structure is to contain three offices and shower and toilet facilities for marina customers and boat owners. At present there are only portable toilets available for these people. The new building is to be located at a site on the property other than that of the building to be raised. Therein lies the crux of the dispute between the parties: it is the CT Page 6359 placement of the new building which the plaintiff opposes. While plaintiff alleges a number of defects in the subject application, she contends that by virtue of the commission's illegal decision, the construction as approved will degrade her view and adversely affect the value of her property (See Transcript, S-1, Hearing of February 6, 1997, pp. 18-19, remarks of Attorney Ciulla). The plaintiff's claims fall into three general categories; failure by the commission to make required findings, coupled with failure by the applicant to produce evidence needed to make such findings; failure by the applicant to file in timely fashion some required components of the said application; allowance by the defendant Commission of additional evidence from the applicant following the close of the public hearing, while denying the plaintiff the opportunity to respond.
 II
Defendant Jacques filed with the Defendant Commission his Application for Special Exception, Application for Certificate of Zoning Compliance, Application for Review of Coastal Site Plan and a Proposed Site Plan (Application #96-12.3) on or about December 18, 1996. A public hearing at which the appellant and her counsel appeared and were heard was held on February 6, 1997. The Commission began its discussion of the application at its meeting of February 20, 1997, continued its discussion on March 6, 1997, and completed its deliberations on March 20, 1997, at which time the subject application was approved with conditions. Notice of the Commission's decision was published on March 26, 1997. This appeal followed:
A hearing on this appeal was held on February 3, 1998, at which the plaintiff was found to be an aggrieved person as defined by (General Statutes § 8-8 (a)(1).
 III
A special exception is defined in Section "6.31 SpecialException or Special Use," of the Zoning Regulations of the Town of Branford:
 A Special Exception is a use of property which may be appropriate to a given zoning district, but which may be incompatible in some locations within the district because of the size, intensity, design, traffic volumes, or other characteristics associated with the use and therefore is not CT Page 6360 permitted by right everywhere within such district. Such use is allowable only when the commission finds that the facts and conditions upon which the use is permitted exist.
Defendant Jacques' application contemplated no change in the use of the subject property, nor an increase in the intensity of the use, nor in traffic volumes, nor change in other characteristics associated with the use. Jacques was required to apply for special exception by said zoning regulations, section 32.2, which reads, in pertinent part:
 "Any change in a building, structure or use previously approved as a Special Exception and any change of a building, structure or use which would require a Special Exception shall be submitted to the Commission for a decision if any of the following conditions apply:
. . . c. A proposed change requires a building permit."
The standards to be applied by the commission to an application for Special Exception are stated in Section 32.5Special Exception Standards, of the Zoning Regulations:
The Commission shall approve a Special Exception application only if it finds that the proposed buildings, structures and uses conform to the townwide standards and requirements of the zoning district in which the building, structure or use is to be located as well as the standards contained in section 31, and that the applicant has established by affirmative evidence that requirements applicable to the particular Special Exception (as described in Sections 33, 34, 35, 36, 37, 38 and 44) as well as the following general standards are met:
1. The scale and character of proposed development shall be in harmony with the surrounding area and not have a detrimental effect on property values in the surrounding area.
2. The size of the site shall be sufficient to accommodate the construction and maintenance of the proposed buildings and the intensity of the proposed use(s).
3. The architectural design of proposed structures shall be harmonious with the character or the surrounding area.
4. Traffic generated by proposed uses shall not lower the CT Page 6361 Level of Service or cause hazardous conditions on the roadway system within one mile of the site or cause unsafe conditions on the site itself.
The standards for site plan approval are found in Zoning Regulations, Section 31.5. The standards include the following: "The Commission shall deny a site plan application if it finds that one or more of the applicable standards or requirements are not met." The Special Exception Standards, Section 32.5, include the following: "The Commission shall deny a Special Exception application if it finds that one or more of the applicable standards or requirements are not met."
 IV
Judicial review of the Commission's decision is limited to a determination of whether the Commission's decision was arbitrary, illegal or an abuse of discretion, Whitaker v. Zoning Board ofAppeals, 179 Conn. 650, 654, 427 A.2d 1346 (1980). The Commission is vested with a large measure of discretion, and the burden of showing the agency has acted improperly rests upon the one who asserts it, Mario v. Fairfield, 217 Conn. 164, 169. Courts are not to substitute their judgment for that of the board, . . . and decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly exercised after a full hearing, Torsiello v. Zoning board of Appeals, 3 Conn. App., 47,49. Courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution,Burnham v. Planning Zoning Commission, 189 Conn. 261, 266, (citation omitted). Because municipal [land use and] inland wetlands agencies are composed of volunteer lay-persons, procedures and fact-finding must of necessity be somewhat more relaxed than for state agencies, Grimes v. ConservationCommission, 243 Conn. 266, 281. Administrative due process requires that the parties involved have an opportunity to know the facts on which the Commission is asked to act . . . and to offer rebuttal evidence, Grimes v. Conservation Commission,supra, at 274. Failure of an agency decision to make findings, even those required by statute or regulation, does not render its decision void; rather, the reviewing court must search the record of the hearing before that commission to determine if there is an CT Page 6362 adequate basis for its decision, Samperi v. Inland WetlandsAgency, 226 Conn. 579, 588-89, quoting from Gagnon v. InlandWetlands Watercourses Commission, 213 Conn. 604, 611. The reviewing court must sustain the agency's decision if there is substantial evidence in the record to support that decision,Samperi v. Inland Wetlands Agency, supra, at 587-88. While the court must search the record, the burden is on the plaintiff to establish that substantial evidence does not exist in the record to support the agency's decision, Id. at 587. When considering an application for a special exception, a zoning authority acts in an administrative capacity and its function is to determine whether the proposed use is permitted under the regulations and whether the standards set forth in the regulations and statutes are satisfied. It has no discretion to deny the special exception if the regulations and statutes are satisfied, Daughters of St.Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53.56 (citations omitted).
 V
Approval of an application by the Commission implies that all the applicable standards and requirements have been met, and if there is substantial evidence in the record which can support said approval the Commission's decision must stand.
Plaintiff argues that she presented substantial evidence as to the detrimental impact the proposed development would have upon her property and that the applicant failed to produce any evidence to contradict plaintiff on this point. The court disagrees. At the hearing of February 6, 1997, applicants's attorney and architect responded to plaintiff's claims. They asserted, inter alia, that the impact on plaintiff's view was not adverse, was minimal. They pointed out that while plaintiff would suffer some loss of view from the construction of the proposed building, she would gain some view by virtue of the razing of the existing building. Applicant's architect estimated the net loss of view to be as low as 2 degrees (Transcript S-1 pp. 65-67). Applicant's attorney took issue with plaintiff's real estate expert, pointing out that the expert was contrasting the value of property with a water view to that of property without a water view; whereas, here, the attorney asserted, plaintiff would continue to enjoy a water view, should the building, as proposed, be constructed (Transcript S-1 pp. 55-70). The court finds that there is substantial evidence in the record sufficient to permit the Commission to find no adverse impact on plaintiff's property. CT Page 6363
At the hearing of February 6, 1997, plaintiff's attorney asserted that the commission had to make, pursuant to section 32.5 an affirmative finding, based on evidence presented by the applicant that the proposed development is in harmony with the surrounding area and will not have a detrimental effect upon property values, which finding, plaintiff claims, was not made. As indicated below, while the Commission made no finding, there was sufficient evidence in the record to support such finding.
The plaintiff argues further that Section 31.5.4 requires the Commission to find, inter alia, that the proposed development . . . will preserve and enhance the adjacent property values", and that "at least the following aspects of the site plan shall be evaluated to determine conformity to these objectives": . . ."(f) The preservation of natural attributes and major features of the site such as . . . scenic views both from the site and onto or over the site", and that no such finding was made . . . Section 31.5.4 is entitled Landscaping and Screening. The court finds that the evaluation of the site plan required by Section 31.5.4 is with reference to landscaping and screening and thus not germane to this application. Even were a finding required as to the "preservation of . . . scenic views . . . over the site" there is, as indicated, supra, evidence in the record which would permit the Commission to find that the proposed building would have little or no detrimental impact on plaintiff's view and, thus, that the site plan was compatible with the objectives stated in Section 31.5.4(f) of the regulations.
Section 31.5.7 of the Zoning Regulations, Character andAppearance, requires, in pertinent part, "That the location, size and design of any proposed building . . . [its] location on the site . . . in relation to . . . adjacent residences . . . will be compatible and harmonious with the character and appearance of the surrounding neighborhood, and will not be . . . detrimental to the appropriate development or use of any adjacent buildings . . ." It is plaintiff's contention that the defendant did not, and could not make such a finding. The court finds that there was sufficient information in the record, including the description of the proposed building by applicant's representatives, comments by opponents of the application indicating it was not the proposed building itself, but its location, which was the source of their concern, the conclusion of the Town of Branford Center Revitalization Review Board (ROR CT Page 6364 19) that the building "is of a construction which is harmonious with and consistent with shoreline architecture" as well as the staff report (ROR 14) adopting the Review Board's conclusion, to support the findings required by Section 31.5.7.
The court finds that plaintiff's claim with regard to Zoning Regulations, Section 31.5.5, is without merit. The application, as amended, showing recessed lighting on the exterior of the proposed building, sufficed to meet the requirements of Section 31.5.5.
Plaintiff's claims that the site plan was not based on an A-2 survey, the need for evaluation and marking of wetlands by a soil scientist, findings regarding parking, and compliance with Zoning Regulations, Section 31.4.2.2 and Section 36 are addressed in Section VI, infra.
Zoning Regulations, Section 45, COASTAL MANAGEMENT DISTRICT Section 45.4, Statutory Criteria, states, in pertinent part: "In addition to determining compliance with any other applicable standards, requirements or criteria set forth by these regulations the Commission shall review coastal site plans for compliance with the following criteria established in Section22a-106 of the General Statutes; . . . 45.4.2 The acceptability of potential adverse impacts of the proposed activity on coastal resources as defined in section 22a-93
(15) of the Connecticut General Statutes;"
General Statutes, Section 22a-93 (15)(F) includes as an adverse impact on coastal resources, "(F) degrading visual quality through significant alteration of the natural features of vistas and view points;" petitioner asserts that the applicant simply indicated "no adverse impact" on his application for coastal site plan review, while plaintiff presented unambiguous and uncontroverted testimony that her scenic view would be severely and adversely impacted by the proposed development. Plaintiff asserts that the defendant Commission's approval of the subject application was flawed in that the finding required by Section 45.4.2 was not, and could not be made.
Defendants counter that the "coastal resource" at issue is the applicant's property, and that plaintiff's view across that property is not a coastal resource as defined by General Statutes § 22a-93. In support of this position defendant Jacques cites CT Page 6365 a memo from the Connecticut Department of Environmental Protection ("DEP") as well as a comment by Town Planner Shirley Rasmussen [Transcript, S. 2, p. 3, Meeting of February 20, 1997].
In making a determination as to the interpretation of Section 45.4.2 the defendant Commission was entitled to rely on the opinion or a state agency with greater experience and Competence in the field, such as the DEP, Timber Trails Corporation v.Planning and Zoning Commission, 222 Conn. 380, 398.
In applying the law to the facts of a particular case the board is endowed with a liberal discretion and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal, Spero v. Zoning Board ofAppeals, 217 Conn. 435, 440 (citations omitted). "The commission enjoys reasonable discretion in construing the regulations it is charged with enforcing" Michael v. Planning and ZoningCommission, 28 Conn. App. 314, 323 (citations omitted). The court finds the Commission's interpretation of General Statutes, Section 22a-93 (15) (F) and Zoning Regulations Section 45 reasonable. Even with plaintiff's interpretation accepted there is substantial evidence in the record to support the required finding. The court finds that the plaintiff's view across applicant's property does not constitute a coastal resource as the term is used in Section 45.4.2 of the Zoning Regulations.
 VI
Plaintiff claims she was denied her procedural due process rights by virtue of certain deficiencies in the application; because she was denied the right of rebuttal at the public hearing of February 6, 1997; and because the Commission received certain documents and information relating to said application following the close of the public hearing. Administrative due requires that the parties involved have an opportunity to know the facts on which the Commission is asked to act . . . and to offer rebuttal evidence, Grimes v. Conservation Commission,243 Conn. 261, 274. The court finds that plaintiff was not deprived of notice and opportunity to be heard by reason of deficiencies in the application or the receipt of information or documents relating to the application following the conclusion of the public hearing. The court finds plaintiff was given ample opportunity to be heard at the public hearing, (Transcript-S-1, pp. 18-39; 47-54; 76-79.) and was not denied due process by the Commission's limitation on rebuttal by the plaintiff and her CT Page 6366 attorney at the close of the session.
As to the defects in the filing alleged by the plaintiff, it should be noted that said deficiencies were pointed out to the Commission by plaintiff's counsel at the public hearing. Indeed, virtually all of the plaintiff's claims on appeal were raised by plaintiff's counsel in the course of the public hearing. Second, Section 31.2 of the Zoning Regulation states:
 The Commission may exempt from Special Exception approval procedures, a previously approved Special Exception which does not involve an increase in required parking and does not significantly alter the nature of the use of the site.
This provision was cited to the Commission by defendant Jacques' attorney at the public hearing of February 6, 1997, and he requested that the Commission waive "any requirements as to the site plan" (Transcript, S-1, p. 5)
At its meeting of February 20, 1997, the Commission discussed "the points that may have been missing from the application"; "Some of the deficiencies that we should consider" (Transcript, S-2, p. 2)
The Commission considered the issue of the A-2 survey; (Transcript S-1, p. 3) the late filing of a site plan showing tidal wetlands; (Transcript, S-1, p. 4); The alleged requirement that wetlands be delineated by a soil scientist (Transcript, S-1, p. 6); offsite information; (Transcript, S-1, p. 6); the issue of a flood plain report, pursuant to Section 36, (Transcript, S-1, p. 7); the requirement of a health department report, pursuant to Section 36.7d (Transcript, S-1, pp. 7-8). The Town Planner, acting as staff to the Commission reported on these items, gave her opinions regarding the timeliness or importance of certain items and gave her opinion of the application of Section 45 to plaintiff's claim of adverse impact on her water view. The Town Planner's opinion re; Section 45 was buttressed by a letter from a Department of Environmental Protection official, received following the close of the public hearing. (ROR #15)
The Commission proceeded to discuss the "deficiencies" in the application. The chairman, who steadfastly voiced opposition to the application on its merits, and who eventually voted against the application, stated his belief that the "deficiencies" were "minor" (S-2, p. 3) and "some of the things that were missing CT Page 6367 these are not that critical and that's not the reason it would be, it wouldn't be rejected on a technicality."
"Mr. Vaiuso: Not technicalities"
"Mr. Chairman: . . . We would reject it if we can on the basis on (sic) the effect on the surrounding neighborhood." (Earlier, when asked his opinion on whether the information submitted after the public hearing can be accepted, a third Commission member, Mr. Fisher stated: "I think the stuff is very minor to cause the application to be opposed.") (Transcript, S-2, p. 8). The chairman's remarks, quoted, supra, were the last addressed to "deficiencies" in the filing. Subsequent to those remarks the Commission went on to debate the application on its merits, focusing on the location of the proposed building and its impact on plaintiff's water view, and ultimately to approve the application. While the Commission never voted on the issue of waiving any filing requirements for the subject application, it is clear in context that the Commission, in proceeding to decide the application on its merits, waived the above-cited "requirements", and any untimely filing of same.
The court finds that the defendant Commission had the power to so waive, and that in so doing did not abuse its discretion; any late or arguably deficient filings, did not deprive plaintiff of notice and adequate opportunity to be heard, in that the listed "deficiencies" bore little or no relationship to what all concerned agreed was the crucial issue; the impact on plaintiff's water view of the construction of the proposed building on the location selected by the applicant. Nor did the receipt by the Commission of information and opinion from staff members or town officials following conclusion of the public hearing deprive plaintiff of the opportunity to be heard; a zoning board may receive technical assistance in executive session, Pizzola v.Planning Zoning Commission, 167 Conn. 202, 207.
 VII
The court finds there is substantial evidence in the record to support the defendant Commission's decision to approve the applicant Jacques' Application for Special Exception. The plaintiff, Carol Bryan, has failed to establish, by a fair preponderance of the evidence, that the defendant Comission acted, illegally, arbitrarily or in abuse of its discretion in approving said application. CT Page 6368
This appeal, accordingly, is denied dismissed.
By the court, Downey, J.