## M. Joseph Kelly et al. *v.* Zoning Board of Appeals of the Town of Hamden et al.
### (8040)

Dupont, C. J., Foti and Lavery, Js.

Argued January 9—decision released May 29, 1990

*Carl J. Amento,* with whom was *Robert J. Piscitelli,* for the appellants (plaintiffs).

*Steven Rolnick,* assistant town attorney, for the appellee (named defendant).

*Thomas O. Terrace,* for the appellees (defendant John Capone et al.).

Lavery, J. This is an appeal from the judgment of the trial court dismissing the plaintiffs' appeal from a

decision of the Hamden zoning board of appeals (board) granting a petition for a variance to the defendants John Capone and Capone Development Corporation (Capone) to build multi-family dwellings on a parcel owned by the defendants on Evergreen Avenue in Hamden. The plaintiffs are owners of property abutting the subject parcel. The dispositive issue in this appeal is whether there was evidence before the board that the application of the existing zoning regulations to the subject parcel would impose a legally cognizable hardship on the owner's use of the land. We find error in the trial court's conclusion that there was a hardship requiring a variance.

The essential facts pertinent to this appeal are as follows. On April 24, 1987, the defendant Capone applied to the board for a variance to build multi-unit dwellings consisting of thirty-six two bedroom condominium units in seven two story buildings on 4.1 acres off Evergreen Avenue in Hamden. The condominiums were intended to be exclusively for the elderly and the handicapped and would have had access only to Evergreen Avenue. The site is located in an R4 zone, which permits multi-family dwellings provided that the dwellings are located on and have vehicle access to Whitney Avenue, Dixwell Avenue or Old Dixwell Avenue. All of those streets are major thoroughfares in the town of Hamden. The property is located on Evergreen Avenue and does not have vehicle access to any other street. The R-4 zone is a one-family dwelling zone except for property located on one of the three listed streets.

In February, 1987, the board denied a prior variance application to build fifty-four units of senior citizen housing on the site. Capone has not claimed that there has been any change of circumstance since the prior

application. The hardship set forth[1] in the application that is the subject of this appeal was the pressing need for housing for the elderly and the handicapped, and that the proposed site has unique physical and topographical features due to its historic use as a site for agricultural experiments. The application also claims that due to the severe slope of the land it is impractical to subdivide the property into individual lots.

On June 18, 1987, a hearing was held before the board. At the hearing, Capone presented the testimony of an engineering expert, George Cotter. Cotter testified that it was possible to build up to twelve single-family residences either by front lots and rear lots or by a single roadway as was proposed for the condominium project. Capone's attorney, Thomas O. Terrace, testified: "We are reducing the scope of the project from eleven buildings as originally proposed to seven buildings. In this effect, it would be fewer buildings than

---

[1] Capone's application contained the following language concerning hardship:

"The unique hardship involves the special use proposed for this parcel. The only reference to 'elderly' housing in the regulations consists of the definition of elderly parking. No reference is made to the location, design, and construction of this type of dwelling unit. All governmental studies demonstrate the pressing need for elderly housing.

"Although town consultants expressed the need for smaller housing units in their studies, it is clear that their intent was not adequately expressed due to the fact that no private elderly construction has occurred.

"Additionally, the proposed site has unique physical and topographical features due to its historical use as an agricultural experimental site. The parcel also slopes downward from Evergreen Ave. easterly to the area of Murlyn St.; thus, making it impractical to subdivide the property into individual lots and creating an ideal candidate for a planned residential community.

"The proposal is designed to promote the general welfare of the community because it serves the public good and it is not detrimental to the neighborhood. Finally, the fact that the proposed condominiums will be restricted and limited to elderly occupancy constitues a special reason sufficient to authorize the grant of a variance."

that which is allowed under the regular single-family home subdivision where, should my client submit the application for a subdivision, [he would] be allowed as a right to put ten to twelve single family homes in the area."

Capone presented testimony on the need for elderly housing, the advantages of multi-family development versus single-family development of the subject parcel and the compatibility of the multi-family dwellings with the surrounding neighborhood. The plaintiffs, neighbors opposing the development, stated that the only hardship was economic; that, under the existing regulations, Capone could develop the property by constructing single-family homes just as the plaintiffs had developed their property; that Evergreen Avenue was a narrow, winding street with blind curves and steep slopes; that the street was difficult to negotiate in the winter; that existing surface, water and sewage problems would be aggravated by the building of the multi-family dwellings; and that the site was inappropriate for elderly housing.

The Hamden town planner filed a report with the board, opposing the granting of the variance. At the end of the hearing, the board granted the variance stating that "it was the minimum variance necessary to allow reasonable use of the land and its use would not impair the essential character of the neighborhood."

A variance is an authorization obtained from the zoning board of appeals to use property in a manner otherwise forbidden by the zoning regulations. *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 372, 537 A.2d 1030 (1988). For a variance to be granted under General Statutes § 8-6 (3), two conditions must be fulfilled: (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be

shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. *Smith* v. *Zoning Board of Appeals*, 174 Conn. 323, 326, 387 A.2d 542 (1978). The zoning board's action must be reasonably supported by evidence in the record. *Smith* v. *Zoning Board of Appeals*, supra, 326; *Aitken* v. *Zoning Board of Appeals*, 18 Conn. App. 195, 204, 557 A.2d 1265 (1989). The hardship must be different in kind from that generally affecting properties in the same zoning district. *Smith* v. *Zoning Board of Appeals*, supra, 324. It is well settled that the granting of a variance must be reserved for unusual or exceptional circumstances. Proof of hardship is a condition precedent to granting a variance. *Point O' Woods Assn., Inc.* v. *Zoning Board of Appeals*, 178 Conn. 364, 365, 423 A.2d 90 (1979). The hardship must " 'arise from circumstances or conditions beyond the control of the property owner.' " *Pollard* v. *Zoning Board of Appeals*, 186 Conn. 32, 39, 438 A.2d 1186 (1982).

Since the reasons stated upon the record were not sufficient to meet the two-pronged conditions set forth above, we must search the record to find some basis for the granting of the variance. *Grillo* v. *Zoning Board of Appeals*, supra, 369. Nowhere does the record show that Capone cannot use the parcel of land in a manner consistent with the zoning regulations and in the same manner as the other properties on Evergreen Avenue. Although in the variance application Capone contends that it is impractical to subdivide the property due to the topography, the record shows no evidence to substantiate this claim. Capone's attorney claimed that as a matter of right the applicant could put in ten to twelve single-family homes on the site. Capone's engineer testified "there is a potential of up to twelve houses if developed on the site." Capone's traffic engineer, in comparing the proposed project to a subdivision, said "If you build single-family homes on the property it will

be exactly the same traffic. The town planner said "[t]he site may be used for single-family dwellings on lots of 10,000 square feet each. The maximum density allowed by the regulations is somewhere between nine and fifteen units, depending on whether the site was developed with rear lots or by a road . . . ."

There was no evidence that a single-family subdivision could not be developed. Capone presented no evidence that the limitation to single-family homes on that parcel would be confiscatory or would effectively destroy the economic utility of the parcel. *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 151–52, 365 A.2d 387 (1976); *Culinary Institute of America, Inc.* v. *Zoning Board of Appeals,* 143 Conn. 257, 261, 121 A.2d 637 (1955). The topography, a steep slope, is shared by every parcel along a long ridge on the east side of Evergreen Avenue. There was no evidence that the application of the existing zoning regulation affected this particular parcel in a manner distinct from neighboring properties. "[T]he hardship must be different in kind from that generally affecting properties in the same zoning district . . . ." *Smith* v. *Zoning Board of Appeals,* supra, 327.

The burden is on the applicant to prove hardship. *Carini* v. *Zoning Board of Appeals,* 164 Conn. 169, 172, 319 A.2d 390 (1972), cert. denied, 414 U.S. 831, 94 S. Ct. 64, 38 L. Ed. 2d 66 (1973). Our examination of the record reveals no hardship.

There is error, the judgment is set aside and the case is remanded with direction to render judgment sustaining the appeal.

In this opinion the other judges concurred.