# PAUL J. GARLASCO *v.* ZONING BOARD OF APPEALS OF THE TOWN OF BRIDGEWATER ET AL.
## (AC 27526)

Flynn, C. J., and Schaller and Gruendel, Js.

Argued March 12—officially released May 29, 2007

*Paul J. Garlasco*, pro se, the appellant (plaintiff).

*Michael A. Zizka*, for the appellee (named defendant).

*Opinion*

SCHALLER, J. The plaintiff, Paul J. Garlasco, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant, the zoning board of appeals of the town of Bridgewater (board), denying his application for a variance.[1] On appeal, the plaintiff claims that the court improperly (1) concluded that he had failed to establish a hardship and (2) abused its discretion by failing to consider additional evidence. We disagree and affirm the judgment of the trial court.[2]

The following factual and procedural history is relevant to our discussion. The plaintiff owns property, approximately eighteen acres in size, in Bridgewater. This property is located in an R-3 zone. After obtaining the eighteen acre property, the plaintiff purchased a small strip of land from his neighbor, Susan T. Hansen. This strip of land contained a paved driveway that connected a gravel driveway on the plaintiff's lot to a section of Old Town Highway that had been abandoned

---

[1] In addition to the board, the plaintiff named Edward R. Bennett, the chairman of the board, and Cheryl L. Pinkos, clerk of the town of Bridgewater, as defendants.

[2] The board claimed, as an alternate ground for affirmance, that the court improperly applied General Statutes § 13a-55, which provides: "Property owners bounding a discontinued or abandoned highway, or a highway any portion of which has been discontinued or abandoned, shall have a right-of-way for all purposes for which a public highway may be now or hereafter used over such discontinued or abandoned highway to the nearest or most accessible highway, provided such right-of-way has not been acquired in conjunction with a limited access highway." As a result of our conclusion with respect to the plaintiff's claims on appeal, we need not reach this issue.

by the town in 1980.[3] The property, however, lacked any frontage on an existing street, a requirement to obtain a building or zoning permit in Bridgewater. In an application dated January 31, 2005, the plaintiff requested a variance of §§ 4.04.01[4] and 4.04.02[5] of the Bridgewater zoning regulations in order to construct a single-family residence. In the alternative, the plaintiff sought a variance of § 4.02.01 of the zoning regulations.[6] Section 4.02.01 allowed for the construction of a permitted principal residential building or use on lots with

---

[3] When the plaintiff purchased the strip of land, by operation of the zoning regulations, it merged with the eighteen acre parcel. Section 4.02.03 of the Bridgewater zoning regulations provides: "Except as provided below, when any two adjoining lots or parcels are owned by the same person(s), and either lot or parcel does not meet current lot frontage or lot area requirements under these Regulations, the adjoining lots or parcels shall be deemed to have merged and shall be considered a single lot or parcel for purposes of these Regulations. The provisions of this section shall not apply to lots or parcels separated by a street or other existing or proposed public or private right of way, or to lots in subdivisions that have been approved by the Commission and recorded in the Bridgewater Land Records unless the subdivision approval had lapsed or otherwise become null and void."

[4] Section 4.04.01 of the Bridgewater zoning regulations provides: "All uses and structures shall comply with the standards set forth in Table 4.04A, except as provided in Sections 4.03." Table 4.04A requires a minimum lot frontage and width of 200 feet in an R-3 zone.

[5] Section 4.04.02 of the Bridgewater zoning regulations provides: "Except as provided in Section 4.03 of these Regulations, no building permit or zoning permit shall be issued for any building, structure, or use unless the lot for which the permit is sought has the required lot width and the required lot frontage on an existing street or a street under construction as shown on a properly approved and filed subdivision plan or other plan approved by the Commission. Corner lots shall be deemed to have two front yards, and frontage and width requirements must be met along or in the direction of all street lines. The minimum lot width required by these Regulations must be maintained in all portions of the lot other than a rear yard."

[6] Section 4.02.01 of the Bridgewater zoning regulations provides: "The lot area, frontage and width requirements of these Regulations shall not prevent construction of a permitted principal residential building or establishment of a permitted principal residential use on any lawfully nonconforming lot, provided that such lot has its frontage on a street, and that adequate sewage disposal facilities and a potable water supply can be assured without hazard to public health. No deviation from current side or rear yard requirements shall be deemed to be authorized by this section."

insufficient lot areas, frontage or width requirements provided that, inter alia, the lot "has its frontage on a street . . . ."

In his application for a variance, the plaintiff stated that the hardship stemmed "from the fact the parcel has never had frontage in a form which would meet the requirements of the Bridgewater Zoning Regulations and the parcel pre-exists the adoption of these regulations. Where the town adopts a regulation which makes a parcel non-conforming it creates a hardship for which a variance would be appropriate."

On March 22, 2005, the board held a public hearing on the plaintiff's application. Several neighbors voiced opposition to the plaintiff's proposal. After further discussion, the members of the board unanimously denied the application for a variance. The board stated that the reason for the denial was the failure to establish a hardship.

On April 15, 2005, the plaintiff appealed from the board's decision to the Superior Court. He claimed that the application of the regulations denied him the reasonable use of the property. He further claimed that this denial amounted to a confiscation. The court issued a memorandum of decision dismissing the plaintiff's appeal on January 11, 2006. The court rejected the board's argument that because the plaintiff had purchased the property with the knowledge that it lacked frontage, he was precluded from seeking a variance. The court also disagreed with the board's claim that the plaintiff was not entitled to a variance because he failed to prove that he had access to the property. The court determined that by merging his property with the strip of land purchased from Hansen, "the plaintiff has created a new lot which has frontage on the discontinued highway. The plain meaning of [General Statutes]

§ 13a-55 is that this new lot has a right-of-way over Old Town Highway."[7]

The court then addressed the issue of whether the board properly determined that the plaintiff had failed to demonstrate the required hardship. After properly searching the record for the basis for the board's decision,[8] the court stated that, as a result of the application of the regulations, "the board would have been required to conclude that the plaintiff would not be entitled to put this property to any use at all other than for his own recreation or to sell to a neighbor." The court then explained that, despite its limitations, the property had substantial value, as evidenced by an offer to purchase it for $60,000. Moreover, the plaintiff had not offered any evidence as to the value of the property; therefore, it was "impossible to determine if the value of the property had been greatly decreased" or "practically destroyed." (Internal quotation marks omitted.) The court concluded that the plaintiff had failed to establish that he had suffered exceptional difficulty or unusual hardship as a result of the application of the zoning regulation. This appeal followed.

As a preliminary matter, we identify the applicable legal principles for our consideration of the plaintiff's appeal. "Our standard of review when considering an appeal from the judgment of a court regarding the decision of a zoning board to grant or deny a variance is well established. We must determine whether the trial court correctly concluded that the board's act was not

---

[7] See footnote 2.

[8] "Where the board states its reasons on the record we look no further. . . . Where, however, the board has not articulated the reasons for its actions, the court must search the entire record to find a basis for the board's decision." (Internal quotation marks omitted.) *Oakbridge/Rogers Avenue Realty, LLC* v. *Planning & Zoning Board*, 78 Conn. App. 242, 247, 826 A.2d 1232 (2003); see also *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208, 658 A.2d 559 (1995).

arbitrary, illegal or an abuse of discretion. . . . Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 165, 855 A.2d 1044 (2004); see also *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 697–98, 784 A.2d 354 (2001).

"A variance is an authorization obtained from the zoning board of appeals to use property in a manner otherwise forbidden by the zoning regulations. . . . For a variance to be granted under General Statutes § 8-6 (3), two conditions must be fulfilled: (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. . . . The hardship must be different in kind from that generally affecting properties in the same zoning district. . . . It is well settled that the granting of a variance must be reserved for unusual or exceptional circumstances. Proof of hardship is a condition precedent to granting a variance. . . . The hardship must arise from circumstances or conditions beyond the control of the property owner." (Citations omitted; internal quotation marks omitted.) *Kelly* v. *Zoning Board of Appeals*, 21 Conn. App. 594, 597–98, 575 A.2d 249 (1990).

I

The plaintiff first claims that the court improperly concluded that he had failed to establish a hardship.

Specifically, the plaintiff contends that without a variance he was denied any reasonable use of his property and that the value of his property was greatly decreased or destroyed. We are not persuaded.

A

The plaintiff first argues that the application of the zoning regulations denied him any reasonable use of his property. The board responds that the plaintiff failed to establish that the construction of a single-family home was the only reasonable use of the property, and, therefore, this argument must fail. We agree.

The following additional facts are necessary for the resolution of this issue. The court, in its memorandum of decision, stated that "[t]he plaintiff never offered any evidence of hardship other than the basic facts that the property lies in an R-3 zone and had no frontage on an existing public highway." The court further noted that, due to the zoning regulations, the plaintiff would have been unable to put this property to any use permitted in the R-3 zone.[9] Nevertheless, the court, relying on *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 537 A.2d 1030 (1988), concluded that because the record revealed that a neighbor had offered $60,000 to purchase the property, the property retained a potential use.

A review of the *Grillo* case will facilitate our discussion. In that case, Jessica F. DeFrank owned two contiguous rectangular lots in West Haven. Id., 363–64. A

---

[9] Section 7.01.02 of the Bridgewater zoning regulations provides: "No land use shall be established or changed and no building or structure shall be used, erected, constructed, moved, enlarged, or altered, in whole or in part, until a zoning permit or special permit has been issued by the Commission or its authorized agent." Moreover, § 4.04.02 provides in relevant part that "[e]xcept as provided in Section 4.03 of these Regulations, no building permit or zoning permit shall be issued for any building, structure, or use unless the lot for which the permit is sought has the required lot width and the required lot frontage on an existing street . . . ."

residence was situated on the easterly lot, and the remaining lot was used as a side yard. Id., 364. The plaintiff, Abele E. Grillo, owned the abutting lot to the west of the side yard. Id., 365. He had offered DeFrank approximately $8000 for the side yard, but the transaction was not completed. Id., 366.

DeFrank sought a variance for the side yard lot so that it could be used as a building lot. Id. She presented evidence to the zoning board that if she obtained a variance to construct a two-family house, the value of the side yard was $26,000. Id. If the side yard could not be used as a building lot, the market value, as reflected in the assessment records, was $5000, although there was evidence that the plaintiff remained interested in purchasing the property. Id. The board granted the variance, and the trial court dismissed the plaintiff's appeal, noting that "the board could have found that because DeFrank could make no reasonable use of the lot, its market value was minimal, being of use only to enhance the enjoyment of adjacent lands." (Internal quotation marks omitted.) Id., 366–67.

Our Supreme Court reversed the judgment of the court. "We disagree, however, with the trial court's conclusion drawn from the record of the public hearing that the inability to erect a one-family or two-family residence on the lot meant that DeFrank could make no reasonable use of the lot and thus its market value was minimal. It was undisputed that DeFrank was using the vacant lot as a side yard for the house she owned on the adjoining lot. Such a use was certainly reasonable and undoubtedly would enhance the price she would receive for the property as a whole if she were to sell it. *The evidence indicated also that the plaintiff had offered her $8000 for the lot in 1982 so that he might use it, not as a building lot, but as a side yard for his adjoining property.* According to the assessor's

records the lot had a market value of $5000. This valuation of the lot for the purpose of its current use as a side yard cannot fairly be characterized as minimal. . . . [T]*here is no evidence that the vacant lot is unmarketable for its present use as a side yard enhancing the value* of the adjoining DeFrank property or *of other adjoining properties, such as that of the plaintiff.* Proof of financial hardship having a confiscatory or arbitrary effect requires more than testimony that property can be sold only for a price substantially lower than can be obtained if a variance is granted to permit a use otherwise prohibited by the zoning regulations." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 369–71. In other words, DeFrank was not deprived of the reasonable use of the property because of its potential utilization as a side yard, not only to benefit her property, but also that of abutting property owners, such as the plaintiff.

Similarly, in the present case, there was evidence that George A. Kress and Marcia L. Kress (Kress family) owned property adjacent to the plaintiff's parcel and had offered to purchase the property in 2002. The Kress family submitted this offer in an attempt to resolve a dispute with the plaintiff's predecessor in title, Robert Grey.[10] The plaintiff was Grey's attorney and was aware of the offer. As demonstrated by the offer from the Kress family, the property could be used as an addition

---

[10] The plaintiff argues that the court should not have considered the offer made by the Kress family because it was (1) offered to his predecessor in title, (2) done solely for the purposes of settlement and (3) made prior to the purchase of the strip of land from Hansen and, therefore, speculative. We agree with the board that the offer was part of the record, and, therefore, both the board and the court properly considered the offer. Furthermore, the plaintiff failed to introduce *any evidence* as to whether the offer remained available or as to the present value of the property. We note that it was the plaintiff's burden to establish the conditions necessary for the board to grant the variance. See, e.g., *Bogue* v. *Zoning Board of Appeals*, 165 Conn. 749, 754, 345 A.2d 9 (1974).

to the abutting properties. See id., 370. We conclude, therefore, that the court properly determined that the plaintiff failed to establish that the property has no reasonable use.

The plaintiff's reliance on *Pike* v. *Zoning Board of Appeals*, 31 Conn. App. 270, 624 A.2d 909 (1993), is misplaced. In that case, the zoning board denied the plaintiff's application for a variance. Id., 272. The plaintiff's lot was located in a residence-agricultural zone; however, the board of health determined that it was unsuitable for residential or commercial use. Id., 271–72. As a result, the plaintiff sought a variance of the regulation requiring three acres for a nursery or gardening center or a variance of the requirement that seasonal roadside stands sell produce grown predominately on the premises. Id., 272. The zoning board denied the plaintiff's application, citing the failure to demonstrate a hardship, and the trial court dismissed the subsequent appeal. Id., 272–73. We reversed the judgment of the trial court. Id., 278.

In *Pike*, we noted that there was no indication that the plaintiff's property could be used as a side yard. Id., 276. Additionally, the record revealed that without a variance, the value of the lot would be decreased greatly, if not totally destroyed. Id. These two factors distinguish *Pike* from both the present case and our Supreme Court's decision in *Grillo*. As we have noted, there was evidence before the board that the plaintiff's neighbors had offered to purchase the property for $60,000. Moreover, the plaintiff failed to submit any evidence that the value of his property has been decreased greatly or destroyed. We disagree with the plaintiff's claim that *Pike* controls the present case.

### B

The plaintiff next argues that as a result of the zoning regulations, the value of his property was greatly

decreased or destroyed. The board maintains that the court properly concluded that the plaintiff failed to introduce any evidence regarding the value of the property. We agree.

In its memorandum of decision, the court stated: "On the issue of decrease in value [of the property], the plaintiff offered no evidence at all. The plaintiff never offered any evidence of the value of the land with a house on it so that it could be measured against a value of $60,000 in a sale to the neighbor. Absent evidence of these values, it is impossible to determine if the value of the property has been 'greatly decreased.' Nor, with evidence of an offer of $60,000, could the board find that the value of the property was 'practically destroyed.' "

The absence of any evidence before the board regarding the value of the property is fatal to the plaintiff's claim on appeal.[11] In this type of zoning appeal, the board, not the court, operates as the finder of facts. See *Collins Group, Inc.* v. *Zoning Board of Appeals*, 78 Conn. App. 561, 564, 827 A.2d 764, cert. denied, 266 Conn. 911, 832 A.2d 68 (2003). "[C]ourts are not to substitute their judgment for that of the board, and . . . the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing . . . . The trial court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support [the board's] findings." (Internal quotation marks omitted.) *DiPietro* v. *Zoning Board of Appeals*, 93 Conn. App. 314, 325, 889 A.2d 269, cert. denied, 277 Conn. 925, 895 A.2d 796 (2006). The plaintiff failed to produce *any evidence* regarding the value of the property. The board, therefore, was precluded from determining the extent to which the application of the

---

[11] At oral argument, the plaintiff conceded that he did not submit to the board any evidence regarding the value of the property.

zoning regulations decreased or destroyed the value of the property.

"Disappointment in the use of property does not constitute exceptional difficulty or unusual hardship . . . . It is well established that the power to grant a variance should be sparingly exercised." (Citation omitted; internal quotation marks omitted.) *Jaser* v. *Zoning Board of Appeals*, 43 Conn. App. 545, 548, 684 A.2d 735 (1996). Furthermore, we emphasize that "[*v*]*ariances cannot be personal in nature, and may be based only upon property conditions. . . . Thus, the identity of a particular user of the land is irrelevant to zoning. . . .* Additionally . . . [p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance. . . . [*T*]*he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . limits the ability of zoning boards to act for personal rather than principled reasons, particularly in the context of variances.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *Horace* v. *Zoning Board of Appeals*, supra, 85 Conn. App. 167–68. In the present case, the plaintiff appears to argue that he was entitled to a variance to build a single-family residence on his property. It was his burden to present evidence to the board regarding the issues of reasonable use and the valuation of the property. His failure to do so resulted in the board properly denying his application for a variance.

## II

The plaintiff next claims that the court abused its discretion by failing to consider additional evidence. Specifically, he argues that it was inequitable to deny his request pursuant to General Statutes § 8-8 (k) to

submit evidence regarding the value of the property.[12] We are not persuaded.

The following additional facts are necessary for our discussion. Before the board, the only evidence regarding the value of the property was the $60,000 offer made to the plaintiff's predecessor in title by his neighbors as a possible settlement of a prior dispute. The court issued its memorandum of decision on January 11, 2006, noting that the plaintiff had failed to establish the value of the property. The next day, the plaintiff filed a motion to open the judgment and to reargue. A second motion to reargue was filed on January 17, 2006. On January 24, 2006, thirteen days after the court issued its memorandum of decision, the plaintiff filed a motion to introduce additional evidence. Specifically, he presented the court with the assessor's card of the property. This card indicated the purchase price he had paid for the property, $200,000, as well as the assessed value of $202,000.[13] The plaintiff further stated: "It is of great importance that the court take into consideration that, when the property was purchased from Mr. Grey, for $200,000, it was completely landlocked and that the value, subsequent to the plaintiff acquiring a right-of-way, to Old Town Highway, would most certainly have dramatically increased the value of the subject premises." The court denied the plaintiff's motion to introduce additional evidence on January 25, 2006.

---

[12] General Statutes § 8-8 (k) provides: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if (1) the record does not contain a complete transcript of the entire proceedings before the board, including all evidence presented to it, pursuant to section 8-7a, or (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. The court may take the evidence or may appoint a referee or committee to take such evidence as it directs and report the same to the court, with any findings of facts and conclusions of law. Any report of a referee, committee or mediator under subsection (f) of section 8-8a shall constitute a part of the proceedings on which the determination of the court shall be made."

[13] The plaintiff previously had attached this card to his brief filed with the Superior Court on July 11, 2005.

At the outset, we note that § 8-8 (k) "does not say that a trial court is required to hold an evidentiary hearing. Our Supreme Court, in *Troiano* v. *Zoning Commission*, 155 Conn. 265, 268, 231 A.2d 536 (1967), held that the trial court had the authority to decide, in the exercise of its discretion, whether additional evidence was necessary for the equitable disposition of the appeal. On appeal, we need only decide whether . . . the trial court abused its discretion in declining to hear additional testimony . . . ." *Collins Group, Inc.* v. *Zoning Board*, supra, 78 Conn. App. 579; see also *Samperi* v. *Planning & Zoning Commission*, 40 Conn. App. 840, 851, 674 A.2d 432 (1996). "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Gevers* v. *Planning & Zoning Commission*, 94 Conn. App. 478, 488–89, 892 A.2d 979 (2006).

In the present case, the plaintiff did not file his motion to introduce additional evidence until *after* the court had issued its decision. It was, therefore, not until he had twice failed to provide evidence of the value of the property, once to the board and once to the court, that the plaintiff attempted to correct this deficiency. Additionally, the plaintiff did not offer evidence regarding the present value of his property. Instead, he offered only the outdated assessor's card that indicated the value of the property before he purchased the strip of land from Hansen. In other words, the evidence that he sought to introduce did not represent the value of the property in its current condition. Under these circumstances, and given our limited and deferential standard of review, we conclude that the court did not abuse its discretion by denying the plaintiff's motion to introduce additional evidence.

The judgment is affirmed.

In this opinion the other judges concurred.