******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DOMINICK CARUSO ET AL. *v.* ZONING BOARD
OF APPEALS OF THE CITY OF
MERIDEN ET AL.
(SC 19380)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued October 5, 2015—officially released February 2, 2016*

*Daniel J. Krisch*, with whom was *Dennis A. Ceneviva*, for the appellant (defendant Mark Development, LLC).

*Joseph P. Williams*, with whom was *Beth Bryan Critton*, for the appellees (plaintiffs).

*Opinion*

ROBINSON, J. This certified appeal arises from the decision of the named defendant, the Zoning Board of Appeals of the City of Meriden (board), to grant a variance to the defendant Mark Development, LLC,[1] to use a certain parcel of real property, located in a regional development zone, as a used car dealership, on the ground that the property has been practically confiscated. The defendant appeals,[2] upon our grant of its petition for certification, from the judgment of the Appellate Court reversing the judgment of the trial court and remanding the case with direction to sustain the appeal of the plaintiffs, the city of Meriden (city), Dominick Caruso,[3] and James Anderson,[4] from the board's decision granting the variance. *Caruso* v. *Zoning Board of Appeals*, 150 Conn. App. 831, 832–33, 93 A.3d 617 (2014). On appeal, the defendant claims that the Appellate Court improperly concluded that: (1) substantial evidence did not support the board's conclusion that the property had been practically confiscated; and (2) evidence of the property's diminution in value was required. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following facts and procedural history. In 2003, the defendant purchased an approximately forty-eight acre parcel in Meriden for more than one million dollars.[5] The property is located in an area zoned as a " 'Regional Development District' " (development district). Id., 833. The Meriden Zoning Regulations (regulations),[6] provide that, six uses are permitted "by right" on such properties. Meriden Zoning Regs., § 213-26.2 (C) (1) (a) (1) through (6) (2008). These uses include: conference center hotels; executive offices; research and development; medical centers; colleges or universities accredited by the state; and distribution facilities combined with executive offices or research and development.[7] Id. The regulations further provide that "[n]o building or premises may be used, in whole or in part, for any purpose except those listed . . . ." Id., § 213-26.2 (C) (1). The stated purpose of the development district, created in 1986, is to "further the economic base of the city by providing for development of a regional scale along the interstate highway system, in an attractive, efficient, [and] environmentally sensitive campus setting." Id., § 213-26.2 (A). Two other properties in Meriden are zoned as part of the development district, one of which contains the Midstate Medical Center, the other of which is owned by the state.

In August, 2008, the defendant applied to the board for a variance seeking permission to use its property for a used car dealership. The defendant claimed that the regulations "drastically [reduce the property's] value for any of the uses to which it could reasonably be put, and/or the effect of applying the regulations is so severe as to amount to a practical confiscation." At

a public hearing on September 2, 2008, the defendant submitted, inter alia, an appraiser's report and a letter from a local attorney in support of its variance application.[8] Immediately following the hearing, the board granted the variance by a four to one vote.[9]

The plaintiffs appealed from the board's decision to the trial court, claiming, inter alia, that the defendant failed to demonstrate that the regulations had caused a practical confiscation of the property and that one board member should have disqualified himself from the proceedings due to a purported conflict of interest.[10] The trial court concluded that substantial evidence supported the board's conclusion that the property had been practically confiscated, noting that the property had been vacant and unused for nearly thirty years and cannot practically be used in any of the ways contemplated within the development district. The court nonetheless sustained the plaintiffs' appeal in part on the alternative ground that one board member should have disqualified himself from considering the defendant's variance application because of his personal relationship with the defendant's attorney. Accordingly, the trial court rendered judgment sustaining the plaintiffs' appeal in part and remanded the case to the board for further proceedings.

The defendant appealed from the judgment of the trial court to the Appellate Court, arguing that the trial court improperly concluded that the board member should have disqualified himself from the proceedings and, therefore, improperly remanded the case for further proceedings.[11] *Caruso* v. *Zoning Board of Appeals*, supra, 150 Conn. App. 833. The plaintiffs cross appealed, asserting that the trial court improperly determined that substantial evidence supported the defendant's practical confiscation claim, but properly sustained their appeal on the disqualification ground. Id. The Appellate Court agreed with the plaintiffs in part, holding that the defendant failed to prove practical confiscation before the board. Id., 838, 841. The court stated that substantial evidence did not support the board's conclusion that the property had been deprived of all reasonable uses because the defendant offered no evidence of the current value of the property or its efforts to market, sell, or develop the property for any permitted use within the development district. Id., 835, 839–40. The Appellate Court therefore reversed the judgment of the trial court, and remanded the case to that court with direction to sustain the plaintiffs' appeal. Id., 841. This certified appeal followed. See footnote 2 of this opinion.

On appeal to this court, the defendant contends that the Appellate Court improperly concluded that substantial evidence did not support the defendant's practical confiscation claim. The defendant further claims that the Appellate Court improperly required evidence of

the property's diminished value in proving practical confiscation and, in doing so, created a categorical rule that all practical confiscation claims must contain such evidence, contrary to our precedent. The plaintiffs dispute this reading of the Appellate Court's decision and maintain that substantial evidence did not support the board's conclusion that the property had been practically confiscated.[12] We agree with the plaintiffs.

As a preliminary matter, we set forth our standard of review. A zoning board of appeals "is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) *Green Falls Associates*, *LLC* v. *Zoning Board of Appeals*, 138 Conn. App. 481, 492, 53 A.3d 273 (2012). A reviewing court is "bound by the substantial evidence rule, according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; internal quotation marks omitted.) *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 453, 853 A.2d 511 (2004).

"A variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town." *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 206, 658 A.2d 559 (1995). A zoning board of appeals is statutorily authorized to grant a variance if two requirements are met: (1) the variance will not "affect substantially the comprehensive zoning plan"; and (2) the application of the regulation causes "unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) *Moon* v. *Zoning Board of Appeals*, 291 Conn. 16, 24, 966 A.2d 722 (2009); see also General Statutes § 8-6 (a) (3).[13] "The hardship must be different in kind from that generally affecting properties in the same zoning district. . . . It is well settled that the granting of a variance must be reserved for unusual or exceptional circumstances." (Internal quotation marks omitted.) *Garlasco* v. *Zoning Board of Appeals*, 101 Conn. App. 451, 456, 922 A.2d 227, cert. denied, 283 Conn. 908, 927 A.2d 917 (2007).

Unusual hardship may be shown by demonstrating that the zoning regulation has deprived the property of all reasonable use and value, thereby practically confiscating the property. This contention "sits at the intersection of two related, yet distinct, areas of law: land use regulation and constitutional takings jurisprudence." *Verrillo* v. *Zoning Board of Appeals*, 155 Conn. App.

657, 699, 111 A.3d 473 (2015). In Connecticut, a taking occurs "when a landowner is prevented from making any beneficial use of its land—as if the government had, in fact, confiscated it." *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 256, 662 A.2d 1179 (1995). Accordingly, a zoning regulation "permanently restricting the enjoyment of property to such an extent that it cannot be utilized for any reasonable purpose goes beyond valid regulation and constitutes a taking without due process." (Internal quotation marks omitted.) *Verrillo* v. *Zoning Board of Appeals*, supra, 710. The same analysis is used in the variance context because, when the regulation "practically destroys or greatly decreases [the property's] value for any permitted use to which it can reasonably be put"; *Libby* v. *Board of Zoning Appeals*, 143 Conn. 46, 51, 118 A.2d 894 (1955); the loss of value alone may rise to the level of a hardship. Cf. *Ward* v. *Zoning Board of Appeals*, 153 Conn. 141, 144–45, 215 A.2d 104 (1965) ("[e]vidence of financial considerations, short of a drastic depreciation in the value of the property, will not suffice [to show hardship]"). "This test is used in the extreme situation where the application of a regulation renders property practically worthless . . . ." Id. In this "exceptional set of circumstances"; *Libby* v. *Board of Zoning Appeals*, supra, 52; the zoning regulation "operate[s] in a confiscatory manner . . . justifying the exercise of the variance power." *Verrillo* v. *Zoning Board of Appeals*, supra, 699.

Thus, in accordance with our takings jurisprudence, we have continually held in variance cases that "[w]hen a reasonable use of the property exists, there can be no practical confiscation." Id., 701. Additionally, "[e]vidence that a property is not ' "practically worthless" ' but 'still possesses value' precludes a finding of practical confiscation." Id., 702. For example, in *Rural Water Co.* v. *Zoning Board of Appeals*, 287 Conn. 282, 297, 947 A.2d 944 (2008), we concluded that a lot in a subdivision had not been practically confiscated because a reasonable use of the property remained; the property could continue to be used, as it had for many years, to supply water to the subdivision through a well on the property. Likewise, in *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 369–73, 537 A.2d 1030 (1988), this court held that a lot had not been practically confiscated because it retained some value as a side yard to the property owner as well as her neighbors. Thus, Connecticut courts similarly rejected practical confiscation claims when zoning regulations prevented a property owner from building on the property in a particular way, so long as the property retained some reasonable use under the regulation. See, e.g., *Moon* v. *Zoning Board of Appeals*, supra, 291 Conn. 25–26 (additional living space on second floor); *Kelly* v. *Zoning Board of Appeals*, 21 Conn. App. 594, 595, 575 A.2d 249 (1990) (multifamily dwellings in single-family zone);

*Green Falls Associates*, *LLC* v. *Zoning Board of Appeals*, supra, 138 Conn. App. 495–96 (inability to build three bedroom house did not deprive property of "all economically beneficial or productive use of the land").

Conversely, when the property retains no reasonable use or value under the zoning regulation, a practical confiscation occurs. For instance, in *Pike* v. *Zoning Board of Appeals*, 31 Conn. App. 270, 275–76, 624 A.2d 909 (1993), the Appellate Court held that a lot had been practically confiscated because the property could only reasonably be used for two of the fourteen permitted uses in the zone because of soil problems, and a variance was required in order to use the property in those ways. The Appellate Court noted that there were "no reasonable alternative uses" for the property and that the value of the lot would "be greatly decreased, if not totally destroyed" without a variance. Id., 276. Similarly, in *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals*, 143 Conn. 257, 260–61, 121 A.2d 637 (1956), and *Libby* v. *Board of Zoning Appeals*, supra, 143 Conn. 52–53, this court held that properties containing homes with a large number of rooms had been practically confiscated because the prohibitive cost of maintenance meant that they could no longer reasonably be used, sold, or marketed as single-family residences, despite the owners' best efforts. Thus, "to compel such a use would be confiscatory." *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals*, supra, 259; see also *Nielsen* v. *Zoning Board of Appeals*, 152 Conn. 120, 124–25, 203 A.2d 606 (1964) (factory building in industrial zone practically confiscated because interior design of building no longer suited for industrial purposes); *Lessner* v. *Zoning Board of Appeals*, 151 Conn. 165, 168–70, 195 A.2d 437 (1963) (variance properly granted to permit construction of one story house on vacant lot because property "cannot be used for any permitted purpose without a variance").

In the present case, like in *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 297, and *Grillo* v. *Zoning Board of Appeals*, supra, 206 Conn. 369–73, the defendant failed to prove practical confiscation because it did not demonstrate that the property has been deprived of all reasonable use and value under the regulations. See *Garlasco* v. *Zoning Board of Appeals*, supra, 101 Conn. App. 462 (property owner failed to meet his "burden to present evidence to the board regarding the issues of reasonable use and the valuation of the property"). The defendant presented no evidence of the property's unfitness for any permitted use in the development district, the property's value since 2003, or any efforts to market, sell, or develop the property since 2003. The defendant's evidence of practical confiscation consisted of an appraiser's report and a letter from a local attorney. Although these documents describe the history of the development district, the previous owner's attempts to market the property, and

the market conditions for several of the permitted uses, this evidence is insufficient to establish that the property has *no* reasonable use or value under the regulations.

The defendant's evidence, first, does not indicate that the property is unfit for any permitted use because of a "peculiar characteristic" of the property. *Dolan* v. *Zoning Board of Appeals*, 156 Conn. 426, 429, 242 A.2d 713 (1968). On the contrary, the appraiser's report opines that "the [property's] location is relatively good with convenient access to the interstate highway system . . . . In addition, the [property] has no significant physical characteristics that would preclude development. . . . [T]he majority of the parcel is physically suitable for development." The report notes that the property is "irregularly shaped . . . both open and wooded and evidences a rolling topography although the site predominantly slopes downward . . . ." The attorney's letter provides that the property "has a different lot configuration and topographic features" than the property owned by the state in the development district. Although these physical features are described, the defendant does not explain why they would allow the property to be used as a used car dealership, but not as a conference center hotel, executive office building, research and development site, medical center, college or university, or distribution facility, all of which are permitted in the development district without a variance. See Meriden Zoning Regs., § 213-26.2 (C) (1) (a) (1) through (6) (2008). The defendant also makes no distinction between its property and the other zoned properties in the development district, one of which has been successfully marketed and developed as a medical center.

Further, the defendant's evidence of the unfavorable market conditions in Meriden for two of the permitted uses—namely, executive offices and research and development—is insufficient to establish that the property has no reasonable use or value. The appraiser's report provides that "the market for large corporate headquarter sites in Connecticut is [nonexistent]" and that most interest in "research-design and bio-tech uses" has been confined to areas near Yale University. The attorney's letter provides: "It is my experience that there is no demand for these [campus like] types of developments. This is evidenced by the existence of multiple undeveloped or underdeveloped sites and office buildings with vacancies along the [Interstate 91 and Interstate 691] corridor. Corporate offices are much smaller now. More and more employees are able to work from home or off-site. Support services are often provided by off-site personnel." Neither document squarely addresses or negates the property's potential use as a hotel or conference center, medical center, college or university, or distribution facility. See Meriden Zoning Regs., § 213-26.2 (C) (1) (a) (1) through (6)

(2008). Thus, even if we accept the proposition that the property cannot reasonably be used for executive offices or research and development, the defendant still falls short of establishing that the property has lost *all* reasonable use and value under the regulations.

The defendant also provided no specific evidence of the value of the property, other than its purchase price of more than one million dollars in 2003. The appraiser's report notes only that the property sold for a "relatively low sale price" in 2003 at $23,583 per acre, and that "[t]his unit rate is clearly below the unit rates that can be expected for commercial/industrial sites in the [Meriden and Wallingford] corridor along [Interstate 91]." The report concludes that the property is at a "competitive disadvantage" and that "price/value is a function of supply and demand. . . . [T]he demand for the [property] is limited to [nonexistent] . . . the use restrictions in the [development district] . . . dramatically reduce the market value of the [property]." The attorney's letter provides that the "limited uses permitted in the [development district] make the parcel less competitive and . . . there is essentially no demand for the permitted uses." Neither document, however, opines as to any change in the property's specific value since the defendant's more than one million dollar purchase price in 2003.

Lastly, the defendant provided no information on its efforts to market, sell, or develop the property for any permitted use, and merely speculates on the previous owner's efforts to do so between 1986 and 2003. The appraiser's report provides that "[t]he [property] had an extensive marketing period with limited to no interest in the real estate [market] for numerous years." Similarly, the attorney's letter notes that the previous owner "marketed the . . . undeveloped parcel for [twenty] years but was unable to find a buyer with a plan that complied with the [development district's] zoning regulations." There is, however, no discussion of the defendant's efforts to market, sell, or develop the property since 2003. Nor is there any information provided on the previous owner's attempts to market, sell, or develop the property with any specificity.

On the basis of this record, the board could not reasonably have concluded that the regulations had "greatly decrease[d] or practically destroy[ed] [the property's] value for *any* of the uses to which it could reasonably be put . . . ." (Emphasis added.) *Dolan* v. *Zoning Board of Appeals*, supra, 156 Conn. 431. Giving due deference to the judicial standard of review of board decisions, we cannot say that the record supports a conclusion that the defendant's property has been practically confiscated. See *Green Falls Associates, LLC* v. *Zoning Board of Appeals*, supra, 138 Conn. App. 492; see also *Sydoriak* v. *Zoning Board of Appeals*, 90 Conn. App. 649, 658, 879 A.2d 494 (2005) ("a court

cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty" [internal quotation marks omitted]). The defendant's property actually has more potential uses allowed than the properties in *Rural Water Co.* and *Grillo*, which could only be used to supply water and as a side yard, respectively. See *Rural Water Co.* v. *Zoning Board of Appeals*, supra, 287 Conn. 296–97; *Grillo* v. *Zoning Board of Appeals*, supra, 206 Conn. 372–73. Additionally, unlike the soil problems in *Pike* and the large single-family homes in *Culinary Institute of America, Inc.*, and *Libby*, nothing unique to the defendant's property prevents it from having any reasonable use or value under the regulations. See *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals*, supra, 143 Conn. 262; *Libby* v. *Board of Zoning Appeals*, supra, 143 Conn. 52–53; *Pike* v. *Zoning Board of Appeals*, supra, 31 Conn. App. 276.

We also disagree with the defendant's hardship argument. Zoning, by definition, restricts land use, and "variance[s] must be reserved for unusual or exceptional circumstances." *Kelly* v. *Zoning Board of Appeals*, supra, 21 Conn. App. 598. "Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation . . . on the ground of . . . [unusual] hardship." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 561, 916 A.2d 5 (2007). "It is not a proper function of a zoning board of appeals to vary the application of zoning regulations merely because the regulations hinder landowners and entrepreneurs from putting their property to a more profitable use." *Dolan* v. *Zoning Board of Appeals*, supra, 156 Conn. 430–31. The defendant cannot simply point to the zoning regulation *itself* in arguing that it suffers from an unusual hardship. See General Statutes § 8-6 (a) (3). Any grievances that the defendant has with the zoning plan should be directed toward the zoning commission that creates the plan; not the board when seeking a variance.[14] See *Ward* v. *Zoning Board of Appeals*, supra, 153 Conn. 145 ("[a]rguments concerning the general unsuitability of a neighborhood to the zoning classification in which it has been placed are properly addressed to the promulgators of the ordinance and not to those who have been empowered to grant variances"); *Verrillo* v. *Zoning Board of Appeals*, supra, 155 Conn. App. 723–25 (describing "fundamental distinction between the legislative function of the zoning commission . . . and the administrative and quasi-judicial functions of the zoning board of appeals," in noting that "[i]f the requirements of the [zone] are particularly oppressive to the many . . . properties therein, the proper forum for redress is the town zoning commission" [internal quotation marks omitted]).

The defendant also contends that the Appellate Court improperly required evidence of diminution in the property's value since 2003 in proving its practical confiscation claim and, in doing so, created a categorical rule that all practical confiscation cases must contain such evidence, contrary to our precedent. We disagree with this reading of the Appellate Court's decision. The Appellate Court did not conclude that the defendant failed to prove practical confiscation based *solely* on the lack of evidence of the property's value since 2003. See *Caruso* v. *Zoning Board of Appeals*, supra, 150 Conn. App. 840. Rather, the Appellate Court also noted that the defendant presented no evidence "that it was unable to sell the property or unable to develop the property for any of the uses permitted in [the development district] . . . ." Id. Additionally, the Appellate Court did not declare that *all* practical confiscation cases must contain evidence of the property's diminution in value. See id., 838–40. The Appellate Court simply held that without such evidence *in this case*, with no evidence that the property could not reasonably be used as permitted in the development district, there was "no reliable evidence on which to form the conclusion that application of the . . . regulations had destroyed the value of the property." Id., 838.

Moreover, previous cases finding practical confiscation in the absence of evidence of the property's diminished value are distinguishable. In those cases, the property owners demonstrated that the property could not reasonably be used in any of the ways permitted under the regulation, rendering its lack of value obvious. See, e.g., *Libby* v. *Board of Zoning Appeals*, supra, 143 Conn. 48–49 (large single-family home could no longer be sold or marketed as single-family home; only evidence of value was original purchase price of $23,000); *Pike* v. *Zoning Board of Appeals*, supra, 31 Conn. App. 271 (soil problems prevented any use of lot without variance; only evidence of value was original purchase price of $1000). Without such evidence, as in the present case, this court has declined to find practical confiscation without a showing that the regulation "greatly decrease[d] or practically destroy[ed]" the property's monetary value. *Dolan* v. *Zoning Board of Appeals*, supra, 156 Conn. 431; see id. (restaurant could still reasonably be operated on property without variance allowing liquor license); id. ("There is nothing in the record . . . to indicate the terms and conditions [the owner] was proposing for the sale or rental of his property and what diminishing effect [the] regulation has had on the value of the property. Without this information the board could not have found that the regulation's effect on the property was confiscatory or arbitrary."); see also *Garlasco* v. *Zoning Board of Appeals*, supra, 101 Conn. App. 461 (lot retained value as side yard and absence of evidence of property's value, other than neighbor's offer to purchase lot for $60,000, was "fatal"

to practical confiscation claim). We conclude, therefore, that the Appellate Court properly determined that, without evidence that the property could not reasonably be used as contemplated in the development district, the defendant's lack of evidence of the property's diminution in value required the defeat of its practical confiscation claim. Accordingly, the Appellate Court properly reversed the judgment of the trial court and remanded the case with direction to sustain the plaintiffs' appeal.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The board was also named as a defendant in the plaintiffs' complaint, but is not a party to the present appeal. For the sake of simplicity, we refer to Mark Development, LLC, as the defendant.

[2] We granted the defendant's petition for certification to appeal limited to the following question: "Did the Appellate Court properly determine that the [board] erroneously granted a variance to [the defendant]?" *Caruso* v. *Zoning Board of Appeals*, 314 Conn. 912, 100 A.3d 849 (2014).

[3] Caruso is the city's director of development and enforcement and also serves as the city's planner.

[4] Anderson is the city's zoning enforcement officer and environmental planner.

[5] The defendant's property also includes approximately six acres in the neighboring town of Wallingford. *Caruso* v. *Zoning Board of Appeals*, supra, 150 Conn. App. 833 n.3. Only the acreage in Meriden is at issue in the present appeal. Id. Accordingly, we refer to the forty-eight acre parcel in Meriden as the property throughout this opinion.

[6] We note that the regulations were enacted, as an ordinance, by the Meriden City Council and are presently set forth in chapter 213 of the Meriden City Code.

[7] Heliports, coliseums, arenas, and stadiums are also permitted uses in the development district, subject to the issuance of a special exception from the board. Meriden Zoning Regs., § 213-26.2 (C) (1) (b) (1) and (2) (2008).

[8] The defendant also submitted information on the impact that the used car dealership would have on the surrounding neighborhood. The defendant's attorney argued in favor of the variance and explained this impact to the board. The plaintiffs did not submit any evidence, although Anderson and another zoning official attended the hearing.

[9] By letter dated September 3, 2008, Anderson informed the defendant that the board had granted the variance because the regulations "drastically reduce[d] [the property's] value for any of the uses to which it could reasonably be put, and/or the effect of applying the regulations is so severe as to amount to a practical confiscation." The board's attorney later represented that the letter reflected the reasons for the board's decision.

[10] The plaintiffs also argued that the trial court should sustain the appeal because: (1) the board failed to make the required findings for granting a variance under § 213-59 (C) of the regulations; (2) the board exceeded its authority in granting the variance; (3) the variance impairs the comprehensive zoning plan; and (4) the purchaser with knowledge rule bars the defendant's variance application. The trial court rejected these contentions.

[11] The Appellate Court did not address the issue of disqualification because it determined that the plaintiffs' contention that the defendant had failed to prove practical confiscation was dispositive. *Caruso* v. *Zoning Board of Appeals*, supra, 150 Conn. App. 841.

[12] The plaintiffs also reassert several arguments that they made to the trial court and the Appellate Court, including: (1) that the board failed to make the required findings for granting a variance under § 213-59 (C) of the regulations; see footnote 13 of this opinion; (2) that the variance impairs the comprehensive zoning plan; (3) that the purchaser with knowledge rule bars the defendant's variance application; see, e.g., *Kalimian* v. *Zoning Board of Appeals*, 65 Conn. App. 628, 632–33, 783 A.2d 506 (property owner barred from obtaining variance because property owner was "charged with notice" of zoning regulations in effect when purchasing property and could not "now be heard to complain that the zoning regulations are unjust"), cert. denied, 258 Conn. 936, 785 A.2d 231 (2001); and (4) that one board member should have disqualified himself from considering the defendant's variance application. See footnotes 10 and 11 of this opinion. We need not address

these arguments because we conclude that substantial evidence does not support the board's conclusion that the defendant's property has been practically confiscated.

[13] The regulations also list four factors that the board must consider in deciding whether to grant a variance. Meriden Zoning Regs., § 213-59 (C) (2008). Specifically, the regulations provide that "there must be a finding by the [board] that all of the following conditions exist" before granting a variance on the basis of unusual difficulty or unreasonable hardship: (1) "[t]hat if the owner complied with the provisions of [the zoning] regulations, he would not be able to make any reasonable use of his property"; (2) "[t]hat the difficulties or hardship are peculiar to the property in question, in contrast with those of other properties in the same district"; (3) "[t]hat the hardship was not the result of the applicant's own action"; and (4) "[t]hat the hardship is not merely financial or pecuniary." Id. The regulations further require that the board only grant a variance if it finds that: (1) "[t]he new use will not create a traffic or fire hazard"; (2) "[t]he new use will not block or hamper the town pattern of highway circulation"; and (3) "[t]he new use will not tend to depreciate the value of property in the neighborhood or be otherwise detrimental or aggravating to the neighborhood or its residents or alter the neighborhood's essential characteristics." Id., § 213-59 (B).

[14] The city's mayor, Michael S. Rohde, expressed his concern that the granting of the defendant's variance would result in a zoning change, stating, "[w]hat troubles me the most is that this proposal is seeking a variance for what really amounts to a zoning change. It is within the purview of the [c]ity [c]ouncil to make those types of decisions . . . [the variance] would amount to spot zoning, which I vehemently oppose." Anderson also noted in a memorandum to the board that "[z]oning districts are established by the policy board [of the] [c]ity [c]ouncil and therefore [a zoning] appeals board . . . should not be usurping the policy board's dictate by granting unfounded variances. . . . A [v]ariance is not the process to determine the proper use of a parcel of land." Indeed, as this court has previously stated, "[a variance] should not be used to accomplish what is in effect a substantial change in the uses permitted in a [particular zoning district]. That is a matter for the consideration of the zoning commission. . . . The power to repeal, modify or amend a zoning ordinance rests in the municipal body which had the power to adopt the ordinance, and not in the zoning board of appeals." (Citation omitted; internal quotation marks omitted.) *Kaeser* v. *Zoning Board of Appeals*, 218 Conn. 438, 446, 589 A.2d 1229 (1991).

---